**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2007-045267-CA-01
SECTION: CA30
JUDGE: Reemberto Diaz

**Rodriguez, Cruz Juan Miguel**

Plaintiff(s)

vs.

**R J Reynolds Tobacco Co**

Defendant(s)

_____/

## ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY' FEES & COSTS

On May 25, 2023, the Court entered an Agreed Order on Plaintiff's Motion for Attorneys' Fees and Costs and found that Plaintiff was entitled to reasonable attorneys' fees and costs pursuant to Section 768.79 and 57.041, Florida Statutes, and Florida Rule of Civil Procedure 1.442. To determine the amount of fees and costs to award, the Court held a two-day evidentiary hearing on September 10-11, 2024. The Court also considered the parties' exhibits, written briefing, and the parties' closing arguments which took place on December 3, 2024.

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion is hereby **GRANTED** and Plaintiff shall be awarded reasonable attorneys' fees in the amount of **$2,908,643.80** and reasonable costs in the amount of **$130,000.00.**[1] Plaintiff shall also recover expert costs in the amount **$139,992.00.**

## REASONABLE ATTORNEYS' FEES

In *Florida Patient's Compensation Fund v. Rowe*, the Florida Supreme Court adopted the federal lodestar approach for determining attorneys' fees to "articulate specific guidelines to aid trial judges in the setting of attorney fees." 472 So. 2d 1145, 1145 (Fla. 1985). This approach requires the Court to determine the number of hours reasonably expended and multiply it by a

reasonable hourly rate.  *Id.* at 1151; *see also Universal Prop. & Cas. Ins. Co. v. Deshpande*, 314 So. 3d 416 (Fla. 3d DCA 2020).

Plaintiff has the burden of establishing the prevailing "market rate," *i.e.*, the rate charged in the community by lawyers of reasonably comparable skills, experience, and reputation, for similar services.  *See Rowe*, 472 So. 2d at 1151; *see also* Rule 4-1.5(b)(1)(C).  That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate."  *See Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

Plaintiff also has the burden of presenting evidence sufficient to establish that the hours requested are reasonable.  *See 22nd Century Props., LLC v. FPH Props.*, LLC, 160 So. 3d 135, 142 (Fla. 4th DCA 2015).  When calculating the number of hours reasonably expended on the litigation, "[f]ee applicants are expected to exercise 'billing judgment,' and, if they do not, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Deshpande*, 314 So.3d at 419 (internal quotations omitted).

## REASONABLE HOURLY RATES

A. **Burden of Proof**

As an initial matter, the Court will use the date of the Final Judgment (December 17, 2022) to set the relevant market rates for each of Plaintiff's timekeepers.  In doing so, the Court is opting to award current rates rather than historical rates which have been adjusted to present value.  *See Philip Morris USA Inc. v. Brown*, 313 So. 3d 898, 899 (Fla. 1st DCA 2021) (finding no abuse of discretion in awarding current rates in lieu of awarding historical rates adjusted to present value); *see also Florida Dept. of Agric. & Consumer Services v. Bogorff,* 132 So. 3d 249, 257 (Fla. 4th DCA 2013).

In calculating the reasonable hourly rate to award each of Plaintiff's timekeepers, the Court considered the eight factors outlined in *Florida Patient's Comp. Fund v. Rowe* (the "*Rowe* factors") and Rule 4-1.5 of the Rules of Professional Conduct, except the 'time and labor required,' the 'novelty and difficulty of the question involved,' the 'results obtained,' and 'whether the fee is fixed or contingent," which are only considered in evaluating the reasonable number of hours. *See Gidwani v. Roberts*, 349 So. 3d 917, 922 (Fla. 3d DCA 2022), *citing Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985), *holding modified by Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).  The Court also considered the five factors described in §768.79(8), Florida Statutes.[2]

Both *Rowe* and Rule 4-1.5 are clear that the hourly rate used to compute a lodestar should be based upon "the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature."  R. Regul. Fl. Bar 4-1.5(b)(1)(C); *see also Rowe* at 1151.

B. **Rates Billed to Clients in Similar Cases**

The Court also considered in evaluating the reasonableness of the hourly rates what Plaintiff's counsel charges their own hourly-paying clients. *See Smith v. Sch. Bd. of Palm Beach Cnty.*, 981 So. 2d 6, 9 (Fla. 4th DCA 2007) ("Perhaps the strongest and best evidence of an attorney's market rate is the hourly rate he/she charges clients."); *Jomar Properties, L.L.C. v. Bayview Const. Corp.*, 154 So. 3d 515, 518 (Fla. 4th DCA 2015) (citing *Smith*); T2. 108-09.  As discussed below, the Court has the benefit of being able to compare the rates charged by some of these lawyers in their own cases that are similar to this one with the rates they seek here.

With respect to Mr. Carr, the Court heard evidence that Mr. Carr's law firm, Parafinczuk & Wolf, billed his time at a rate of approximately $400 per hour in personal injury and wrongful death cases.  T. 225-26; *see also* Dep. of A. Carr at 25-26.  Mr. Diaz admitted that he was not aware of any client ever paying Mr. Carr more than $400 per hour for his time, a fact Mr. Carr did not

dispute when he testified at the hearing.  T. 226-27; T2. 108, 111-12; 206-08.  While the personal injury and wrongful death cases Mr. Carr billed time to were not "*Engle* tobacco cases," the Court cannot ignore this evidence when evaluating Plaintiff's request that Mr. Carr be awarded a rate significantly higher than any client has been willing to pay him for similar work (*e.g.*, civil trial work in the context of personal injury and wrongful death).

With respect to Mr. Rockenbach, the Court heard evidence that in 2023 Mr. Rockenbach charged a client $850 per hour in a complicated case where the initial brief took longer than any brief he had ever written.  *See* Def. Ex. 22; T. 95-99; 276-77; 285-86; T2. 126-129; *see also* T. 285-86 (Mr. Rockenbach agreeing that the case was "probably the most complicated brief or largest brief or most time spent on a brief that [he] ever had.").

C. **Rates Charged by Defense Counsel**

Another factor the Court considered, as it did in *Schertzer*, was "the rates charged by the Defendants' attorneys who occupied similar roles in this litigation." Specifically, when assessing the reasonableness of the rate requested by Plaintiff's lead trial counsel in that case, Richard Diaz, the Court considered the rates charged by lead trial counsel for PM USA and lead trial counsel for R.J. Reynolds in that same case.

The evidence adduced at the  hearing in this case was that PM USA's lead counsel, Robert Vaughan and Frank Cruz-Alvarez, billed at hourly rates far less than Plaintiff's counsel is requesting in this case.  Here, the evidence shows that Robert Vaughan charged an hourly rate of $600 per hour in both trials.  Frank Cruz-Alvarez charged an hourly rate of $565 per hour for the first trial and $600 per hour for the second trial.[4]  Plaintiff's counsel requests hourly rates that are nearly double these figures.[5]

D. **Reasonable Rates**

Because of the determination of a reasonable rate is made on an individual basis, the Court heard and considered the testimony concerning each attorney's "experience, reputation, diligence, and ability of the lawyer or lawyers performing the service, and the skill, expertise, or efficiency of effort reflected in the actual providing of such services." Rule 4-1.5(b)(1)(G).  The Court considers this factor particularly important here, given that three attorneys are seeking rates of $1,000 or more, and that Mr. Carr is seeking the highest hourly rate not only in an *Engle* case, but in *any* wrongful death action in Florida.[6]  One would expect an attorney seeking such high rates, including the highest rate ever awarded, to be at the vanguard—the upper echelon of attorneys who perform this work, with the highest levels of experience, reputation, skill, and expertise.  However, the evidence does not bear this out.

Starting with Mr. Carr, his own expert admitted that Mr. Carr was on the bottom of *Engle* plaintiff's counsel in terms of both winning cases and the amounts of his verdicts.  T. 228-29 ("[If] we had three ranges, the ones who are at the very top, the ones who [are] at the very least, and then the ones who are in the middle, he is in the range of the ones who have the lowest verdicts . . ."); *id.* ("Q. Okay.  Mr. Carr also, in addition[ to] win-loss records, he also has the lowest verdicts of any lawyer who actively tries tobacco cases, correct? A. That's also true."); *see also* Def. Ex. 29.  This opinion is shared by Defendant's expert as well.  T2. 107, 113-14.    An award of $1,200 per hour for Mr. Carr is simply not reasonable and is not supported by the evidence adduced at the hearing.

Similarly, Mr. Menendez's request for $1,000 per hour is incongruent with his experience, skill, and expertise litigating *Engle* tobacco cases.  The evidence presented is that despite his years of practice, Mr. Menendez has been involved in six tobacco trials, including the first mistrial of *Garcia*, and two losses.  Def. Ex. 30.  He has not prevailed since the instant case in 2021.  Given the hourly rate the Court finds reasonable for Mr. Carr, who has more overall experience in *Engle* cases, and the rates charged by counsel for the defense who tried the case opposite Mr. Carr and Mr. Menendez, the Court finds that a rate of $1,000 per hour is not supported for Mr. Menendez.

The rates are also not supported when the Court considers the rate it awarded to Mr. Diaz, who has considerably more experience, expertise, success and a more prominent reputation, less than a year ago.

As for Mr. Parafinczuk, who has been practicing since 2007, the Court finds that his limited experience litigating *Engle* tobacco cases, particularly when combined with his limited role in this case, does not support the recommended rate of $850 per hour.  Here, the evidence was that Mr. Parafinczuk's 69 hours was largely spent reviewing materials and offering his input on jury selection issues.  He did not have an active role in either trial.  The Court finds that the rate of $600 per hour is more reasonable here.

With regards to Mr. Rockenbach, Mr. Sales opined that he is a highly skilled and experienced appellate attorney who is board certified in appellate practice.  Mr. Heise concedes that Mr. Rockenbach is in the top tier of appellate lawyers, though, he believes that the top tier is comprised of more than just five or six attorneys.  T2. 126-27.  However, even as a top tier appellate attorney with Mr. Rockenbach's years of experience, the Court finds that the requested hourly rate of $1,100 per hour is too high considering the evidence presented in this case about the rates Mr. Rockenbach charges his hourly clients, as well as the rates awarded to "titans" of the appellate bar in another *Engle* case, and even what was awarded by this Court in *Schertzer* to appellate counsel less than a year ago.

Similarly, although the evidence concerning Mr. Mansell and Mr. Richardson's experience and skill was positive, the rates of $850 per hour and $800 per hour are  high.  As for Mr. Richardson, who graduated law school in 2009 and started practicing in 2012 following a clerkship, the rate being requested of $800 per hour would be 30% higher than Defendant's lead trial counsel, even though Mr. Richardson billed approximately 10 hours and had no meaningful role in the case.  T2. 133-35.  Mr. Mansell's requested rate must also be reduced.  Although the Court accepts Mr. Sales's opinions about the quality of Mr. Mansell's lawyering and recognizes his contribution to

the oral argument in this case, the Court finds that the hourly rate of $650 per hour is more reasonable given his level of experience and consideration of all factors. T. 132-33. This is particularly true considering the rates awarded to "titans" of appellate practice with considerably more years of experience than Mr. Mansell who was licensed in 2007,[7] the rates charged by Mr. Rockenbach to clients, and the rates awarded by this Court to appellate counsel previously.

Finally, with respect to Ms. Atienza, the Court accepts her requested rate of $175 per hour, which was not challenged by Defendant, given that she is a Florida Registered Paralegal with decades of experience. While Ms. Atienza's background may differ in some respects from Ms. Meacomes, the Court finds that the rate of $175 per hour is reasonable for her as well. These rates are in line with the $185 per hour rate charged by Mr. Sales's paralegal, who is also a Florida Registered Paralegal.

As a final check of the reasonableness of the rates being requested and awarded, the Court considers how the rates being requested compare to those awarded to the most prominent attorneys in the Champlain Towers (*i.e.*, Surfside) collapse, a mass casualty case and one of the largest and most challenging cases recently litigated in Miami-Dade County. Mr. Heise, whose firm was involved in the case, described it as "one year just nonstop under the gun, basically daily hits of adrenaline," that was "incredibly difficult, time-sensitive, and required the highest level of lawyer[ing]," and which culminated in a $1.5 billion settlement. T2. 11-13. There, Judge Hanzman awarded $1,000 per hour to the "top top" lawyers that handle personal injury cases in Miami, including Aaron Podhurst and Stuart Grossman, who have practiced since 1961 and 1973, respectively. T2. 12-13.[8] When viewed through this lens, the rates being requested in this case, including, what would be the highest rate ever awarded, are simply not reflective of the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature.

After considering and applying each of the *Rowe* factors, as well as the expert testimony and other evidence adduced at the hearing, the Court finds the following hourly rates to be

reasonable in this case.

|  | **Court Finding** |
|---|---|
| Bard Rockenbach | $950.00 |
| Austin Carr | $950.00 |
| Jose Menendez | $850.00 |
| Jeff Mansell | $650.00 |
| Justin Parafinczuk | $600.00 |
| Adam Richardson | $600.00 |
| Vicky M. (Paralegal) | $175.00 |
| Fresa Atienza (Paralegal) | $175.00 |

### REASONABLE NUMBER OF HOURS

A. **Burden of Proof**

As the movant, Plaintiff has the burden of presenting evidence to establish that the hours requested are reasonable. *See 22nd Century Props., LLC v. FPH Props.*, LLC, 160 So. 3d 135, 142 (Fla. 4th DCA 2015). When calculating the hours reasonably expended on the litigation, "[f]ee

applicants are expected to exercise 'billing judgment,' and, if they do not, 'courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.'" *Deshpande*, 314 So.3d at 419.

Relatedly, *Rowe* requires fee applications to be based upon "accurate and current records." *See Rowe*, 472 So. 2d at 1150 ("Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee."); T.141-42 (Mr. Diaz noting that "Florida law is very clear that you have to keep what they call contemporaneous and meticulous records."). While the failure to keep contemporaneous time is not by itself disqualifying, the hours reconstructed after the fact are subject to higher scrutiny. *See Clemens v. New York Central Mut. Fire Ins. Co.*, 903 F.3d 396 at 400-01 (3d Cir. 2018) (finding that reconstructed records "may warrant more exacting scrutiny than we would bring to contemporaneous or detailed records.") (internal citations omitted); *see also Brake v. Murphy*, 736 So2d 745, 747-48 (Fla. 3d DCA 1999) (reconstructed records need to be more than guesses); *see also* T. 240.

B. **Timekeeping**

In this case, each timekeeper employed a different method of timekeeping. Mr. Rockenbach kept his time on a contemporaneous and daily basis. T2. 87-88. Mr. Carr prepared his timesheets in 2023 (*i.e.* not contemporaneously and years after the tasks were performed). T. 237-40. Mr. Menendez kept handwritten notes on Post-its and other pieces of paper, which he then converted to a single handwritten notepad collecting those prior notes which were disposed of, before converting the second set of handwritten notes into an electronic spreadsheet in 2023 (*i.e.* also years after the tasks were performed). *Id.*

Moreover, as to Mansell. Carr and Menendez in particular, Defendant provided the Court evidence that questions the accuracy and reliability of their time reconstructions independent

of their failure to keep their time contemporaneously.  Nevertheless, Plaintiff's expert who opined on the hours requested by Mansell. Carr and Menendez, effectively recommended that the Court make no reductions to their time other than for items that are not compensable such as time billed before Plaintiff's Proposal for Settlement and travel time.

C. **Methodology of the Parties' Experts**

Each expert in this case employed a different methodology for reviewing the time entries. Mr. Sales, who reviewed the time of appellate counsel, reviewed the entries and determined that no time should be reduced.  *See e.g., Ziontz v. Ocean Trail Unit Owners Ass'n, Inc.*, 663 So. 2d 1334 (Fla. 4th DCA 1993) (highlighting the trial court's "wholly unacceptable finding" that it was reasonable to award the precise number of hours claimed by counsel and testified to by counsel's expert).  Mr. Diaz testified that he reviewed the time entries for each timekeeper individually and reduced Mr. Carr's request by 40 total hours, comprised of 20 hours of time recorded prior to the proposal for settlement, as well as 1/3rd of Mr. Carr's travel time, and some time spent reviewing notices of appearance.  T. 244-45, 248.  He did not reduce any time for being excessive, vague, block-billed, duplicative, or otherwise not recoverable.  T. 248-50.  He conducted a similar review of Mr. Menendez's time and arrived at a similar reduction.  T. 251-51.

Mr. Heise testified that he employed a detailed sampling methodology to review and analyze Plaintiff's 5,180 time entries.  As part of this sampling, he conducted an in-depth line-by-line analysis of 26% of Plaintiff's entries (1,357 items).  *See e.g.,* T2. 69-70, 85-87, 179, 182.  He identified areas where he believed no time should be awarded either as a matter of law or pursuant to *Rowe* and 4-1.5 (*e.g.*, attorney travel time, time associated with Plaintiff's voluntarily dismissed claim for punitive damages, and clerical time billed by attorneys), as well as entries that in his professional opinion, needed to be reduced to address billing infirmities like excessive billing and vague and block billing.  *Id.*; *see also* Def Ex. 2-3. Each of these items is discussed below.  Once his proposed reductions were complete, he calculated the percentage reduction to apply to the

remainder of Plaintiff's entries, other than to trial and pre-trial preparation, for which Mr. Heise awarded nearly 100% of Plaintiff's time, and to those entries which he felt should be reduced to zero.  T2. 87.  He then reviewed the balance of Plaintiff's 5,180 entries to apply these principles and confirm that the same issues he identified in the first 26% of the entries were present in the rest to arrive at his final opinion.  T2. 179; Def. Ex. 4.

The Court finds that Mr. Heise's approach is reasonable.  *See Bath Club Entm't, LLC v. Residences at Bath Club Maint. Ass'n, Inc*., 355 So. 3d 999 (Fla. 3d DCA 2023) (distinguishing *Deshpande*, and finding no abuse of discretion where percentage reductions are based upon sufficient findings); *see also*, *Universal Property & Casualty Insurance Co. v. Deshpande*, 314 So. 3d 416 (Fla. 3d DCA 2020) (finding error in adopting Plaintiff's expert's blanket 10% reduction over Defendant's expert's reductions which were based on an itemized analysis of the billing entries); T. 236 (Mr. Diaz agreeing that percentage reductions are permissible when dealing with a large number of hours).  The Court concludes Mr. Heise's reductions reflect a reasonable number of hours pursuant to Rule 4-1.5, and that the percentage reduction to account for excessive, vague, and block billed time (approximately 14.93%) is reasonable and consistent with past awards in *Engle*-progeny cases.  *See e.g., Principe* (19.4% reduction of hours), *Sommers* (12.89% reduction of hours), and *Landi* (9.47%).[9]

D. **Findings on Specific Areas of Reductions**

Defendant demonstrated that the amount of time Plaintiff is requesting for certain tasks is unreasonable.  While the Court need not discuss every problem in Plaintiff's records, it will address a few to provide further context and support for its findings.

First, Plaintiff is requesting approximately 15 hours of time to prepare expert discovery requests in the form of requests for production and interrogatories, which are nothing more than carbon copies of discovery previously served by Plaintiff's counsel in other cases.  Def. Exs. 51-62;

T2. 51-64.  Specifically, Plaintiff is asking the Court to award roughly 1 hour per discovery request, per expert, even though the requests were *identical* not only to each other—except the name of the witness—but also identical to discovery served by Plaintiff's counsel in other cases just a few months earlier, changing nothing except the case style and the witness's name.  These entries are unreasonable by any measure, particularly at the rates being requested.  As explained by Mr. Heise, this work could have been performed in less than an hour by a legal assistant or paralegal. [10]   T2. 176.  Mr. Diaz did not cut any of this time despite acknowledging that "you have to avoid excessive billing" and "exercise billing judgment."  T. 143.

Another aspect of Plaintiff's time that Defendant brought to the Court's attention, and which supports Mr. Heise's suggested reduction, is the roughly 370 hours billed by Mr. Menendez to substantively identical entries reading: "Trial prep, including review of discovery, depositions, research, work on directs, cross, prepare arguments, prepare witness testimony, work on Voir Dire, [and] research."  As Mr. Heise explained, such a vague description is no more helpful to the Court than billing 370 hours to entries that read: "Did important legal work."  T2. 75-80.  Plaintiff's expert made no reductions for this time despite testifying that "[y]ou cannot have block billing in a fee shifting case.  It's an infirmity. So you want one task, one line."  T. 143.

While each of the tasks listed in Mr. Menendez's entries could justify the time requested, the Court cannot make such an assessment when almost every potential trial task is combined together in a single entry that is repeated dozens of times with no detail as to what discovery is being reviewed, what depositions are being reviewed, what is being researched, what direct examination or cross examinations are being prepared, what argument is being prepared, or what witness is being prepared to testify—or how all of those tasks were repeatedly performed on the same day.  *See Kearney v. Auto-Owners Ins. Co*., 713 F. Supp. 2d 1369, 1377-78 (M.D. Fla. 2010) (in case involving Florida Statute 768.79, the Court described how vague and block billing warrants a reduction of the number of hours claimed in a fee motion); *see also Odes v. Harris*, 2014 WL

11531573 *4 (S.D. Fla. 2014) (cutting block billed time by thirty percent and noting "…Plaintiff's attorney has engaged in block billing, which has made it difficult for the Court to determine the appropriateness of awarding fees for certain tasks, and allowed for billing redundancies and general inefficiency.").  It is worth noting that even with these infirmities, Mr. Heise's methodology largely awarded Mr. Menendez credit for these tasks.

Defendant also presented the Court with evidence of other problems with Plaintiff's time entries, including, but not limited to, billing hours of time to draft a document that the evidence at the hearing demonstrate was already drafted and filed weeks earlier, T2. 45, 50-51, billing far more time to attend hearings than the hearing lasted—while billing separately for preparation, the creation of a proposed order, and travel, T2. 47-49, and employing a method of recording time for reviewing e-mails that led to demonstrably inflated time.  T2. 64-70.

The examples above were sufficient to demonstrate to the Court that Plaintiff did not exercise billing judgment in its submission, and thus, the court is obligated to do it for them.  *See e.g., Deshpande*, 314 So.3d at 419; *see also Puleo v. Morris*, 98 So. 3d 248, 250 (Fla. 2d DCA 2012) ("the circuit court is not bound by the time and billing records presented or by the expert witness's testimony about the reasonableness of the fees requested.  A trial court may reduce attorneys' fees that it determines to be excessive if it makes the requisite findings to support that determination."); accord *El Brazo Fuerte Bakery 2 v. 24 Hour Air Serv., Inc.*, 330 So. 3d 552 (Fla. 4th DCA 2021).

E. **Findings on Time Related to Punitive Damages and Travel**

1. **Time Related to Punitive Damages**

Plaintiff asks the Court to award 366 hours[11] for time spent on their pursuit of a punitive damages claim against Defendant, including, time spent moving to amend, time spent on briefing related to punitive damages, time spent on an evidentiary hearing concerning the application of the

post-1999 version of 768.73, and time spent on a jury exercise after the second trial.

The Parties' respective positions on this issue are discussed thoroughly in memoranda of law submitted prior to the hearing,[12] but in short, Defendant argues that because Plaintiff voluntarily dismissed her claim for punitive damages without ever obtaining a result on the claim, the Court should apply Rule 4-1.5(b)(1)(D) and delete the time because it would be unreasonable to award based upon the "results obtained," which is to say, none.[13]  Plaintiff argues that the decision in *Coates v. R.J. Reynolds*, 365 So. 3d 353, 356 (Fla. 2023), essentially does away with any consideration of the reasonableness of their fee under *Rowe* or Rule 4-1.5, since the case involves fees based upon a proposal for settlement pursuant to 768.79, which is a "sanction" and "penalty," and not a prevailing party statute.  Plaintiff contends the only factor the Court should consider in assessing reasonableness is whether Plaintiff's claim is "frivolous."

The Court finds that *Coates* does not strip its discretion to evaluate and reduce the time related to Plaintiff's voluntarily dismissed claim for punitive damages pursuant to Rule 4-1.5 based upon the "results obtained," which here is no result at all because Plaintiff voluntarily dismissed the claim having never secured any amount from a jury, and where even entitlement was reversed as a matter of law.  The Court in *Coates* expressly stated that this Court should consider "all relevant criteria" in determining the reasonableness of an award of attorneys' fees, which includes the *Rowe* factors and Rule 4-1.5.  *See e.g.,* T. 233-34 (Plaintiff's expert agreeing that *Rowe* is the controlling case, that the "court is required to use the Lone Star [sic] approach and consider the eight criteria set forth in the *Rowe* case," and that "results obtain[ed]" goes to the number of hours).

Therefore, the Court finds no error in Mr. Heise's methodology with respect to this time and exercises its discretion to adopt the same.  *See N. Dade Church of God, Inc. v. JM Statewide, Inc.*, 851 So. 2d 194, 196 (Fla. 3d DCA 2003) (cutting fees related to a claim which was abandoned); *Jomar Properties, L.L.C. v. Bayview Const. Corp.*, 154 So. 3d 515, 519–20 (Fla. 4th DCA 2015) (no abuse of discretion for cutting time based upon limited recovery, where the Court "undertook

the type of flexible, equitable analysis envisioned by the supreme court in *Rowe.*").

2. **Travel Time**

After accounting for Plaintiff's expert's reductions, Plaintiff asks the Court to award attorneys' fees for approximately 55.8 hours[14] of time spent traveling to and from the Miami-Dade County Courthouse for hearings and trial, including over 38 hours billed by Mr. Carr who also lived in Miami-Dade County.  The longstanding rule in Florida is that an award of attorneys' fees should generally not include travel time "without proof that a competent local attorney could not be obtained." *See Dish Network Serv. L.L.C. v. Myers*, 87 So. 3d 72, 78 (Fla. 2d DCA 2012); *see also Grayson v. No Labels*, 2024 WL 473775, at *23 (M.D. Fla. Jan. 4, 2024) (in considering fees under Fla. Stat. § 768.79, stating that Florida courts do not award fees for travel where local counsel was available).  This exception clearly does not apply here where Mr. Carr lived in Miami-Dade County, and his co-counsel, Mr. Menendez, also lived and works in Miami-Dade County.

The Court is not aware of any case where an award of travel time is mandatory, or where travel time is awarded to an attorney commuting to and from their own local courthouse for routine hearings or trial.  *See, e.g.*, *Bank of New York v. Obermeyer*, 260 So.3d 1155, 1156 (Fla. 3d DCA 2018) (awarding fees for time expended by counsel driving from Sarasota to Key West for trials that the opposing party failed to attend); *Eve's Garden, Inc. v. Upshaw & Upshaw, Inc.*, 801 So.2d 976, 979 (Fla. 2d DCA 2001) (awarding fees for travel from Tampa to Dade City for hearings over the opposing party's failure to provide discovery); *Consultech of Jacksonville, Inc. v. Dep't of Health*, 876 So.2d 731, 736 (Fla. 1st DCA 2004) (awarding fees for counsel's 5-6 hour travel time when a witness failed to appear for deposition).  Plaintiff points to the decision to award travel time in the *Harris* case as a basis to award travel time here.  T. 145-46.  But the travel in *Harris* was from South Florida to the Florida Panhandle not a local commute.  T. 190-91.

Based upon the evidence presented in this case, the Court agrees with Mr. Heise's decision to cut all of Mr. Carr's travel time from Plaintiff's request.[15]

## LODESTAR CALCULATION

Based on the above findings, and after consideration of the factors described in *Rowe*, Rule 4-1.5, and 786.79, the Court finds the following attorneys' fees to be reasonable in this case:

|  | **Reasonable Rates** | **Reasonable Hours** | **Lodestar** |
|---|---|---|---|
| Bard Rockenbach | $950 | 613.43 | $582,758.50 |
| Austin Carr | $950 | 1100.68 | $1,045,646.00 |
| Jose Menendez | $850 | 1353.75 | $1,150.687.50 |
| Jeff Mansell | $650 | 84.50 | $54,925.00 |
| Justin Parafinczuk | $600 | 56.45 | $33,870.05 |
| Adam Richardson | $600 | 9.23 | $5,538.00 |
| Vicky M. (Jose's Paralegal) | $175 | 186.62 | $32,658.25 |
| Fresa Atienza (Bard's Paralegal) | $175 | 14.63 | $2,560.25 |
| **TOTAL** |  | **3394.50** | **$2,908,643.75** |

## EXPERT FEES

Whether to award expert fees is within the sound discretion of the Court.  As the Florida Supreme Court held in *Travieso v. Travieso*, 474 So.2d 1184, 1186 (Fla. 1985):

> [E]xpert witness fees, at the discretion of the trial court, may be taxed as costs for a lawyer who testifies as an expert as to reasonable attorney's fees. We do not hold that such expert witness fees must be awarded in all cases. Generally, lawyers are willing to testify gratuitously for other lawyers on the issue of reasonable attorney's fees. This traditionally has been a matter of professional courtesy. An attorney is an officer of the court and should be willing to give the expert testimony necessary to ensure that the trial court has the requisite competent evidence to determine reasonable fees. Only in the exceptional case where the time required for preparation and testifying is burdensome, should the attorney expect compensation.

*Id*. at 1186; *see also Gonzalez v. Veloso*, 731 So. 2d 63, 64 (Fla. 3d DCA 1999) (denial of plaintiff's expert witness fees was not an abuse of discretion); *In re Amends. to Unif. Guidelines for Tax'n of Costs*, 915 So. 2d 612, 614 (Fla. 2005) (the Court "should exercise that discretion in a manner that is consistent with the policy of reducing the overall costs of litigation and of keeping such costs as low as justice will permit."); *Winter Park Imports, Inc. v. JM Family Enterprises, Inc.*, 77 So.3d 227, 232 (Fla. 5th DCA 2011) (cautioning the trial court on remand to exercise its discretion consistent with the Supreme Court's guidance above); *Statewide Uniform Guidelines for Taxation of Costs in Civil Actions,* Oct. 1, 2024, at I(C)(1) and II(D)(1) and (3) (noting that the Court *should* tax "a reasonable fee for deposition and/or court testimony, and the costs of preparation of any *court ordered report*," and *may* tax "a reasonable fee for conducting examinations, investigations, tests, and research and preparing reports," and "a reasonable fee for preparing for deposition . . . and/or court testimony."); Fla. Stat. 57.071(2) (limiting taxation of expert fees).

The time required to prepare and testify in this case can be considered burdensome, and both experts expect to and will be compensated, the Court finds that the amounts being requested are reasonable.

Plaintiff's appellate fee expert, David Sales, seeks an expert fee of $39,380.00, made up of 35.8 hours at a rate of $1,100 per hour.[17]   *See* Plf. Ex. 17.  Mr. Sales provided opinions on the requested fees for three appellate attorneys, including one with 10 hours, and one paralegal whose

rate was not contested and who billed approximately 15 hours.  The Court finds that based upon his background, knowledge, training, and experience, as well as the rates found to be reasonable for the timekeepers in this case, that an award of 34.0 hours at $1,000.00 per hour, and 2.1 hours at $175 per hour, is a reasonable fee to tax as a cost to Defendant and awards the same.[18]

Plaintiff's trial counsel expert, Richard Diaz, seeks an expert fee of $146,515.00.  *See* Plf. Ex. 6.  He requests a rate of $1,000 per hour for approximately 145 hours. The court finds the rate to be reasonable but reduces the amount of hours spent by 10 hours.

Based upon his background, knowledge, training, and experience, as well as the rates found to be reasonable for the timekeepers in this case, and rates awarded to other experts, as well as the issues above, the Court finds that an award of 135 hours at $1,000.00 per hour and 7 hours at $175 per hour, is a reasonable fee for Mr. Diaz to tax as a cost to Defendant and awards the same.

## **CONCLUSION**

Accordingly, Plaintiff is entitled to $2,414,462.63 in attorneys' fees with interest from the date of the Final Judgment.  In addition, Plaintiff shall be entitled to **$130,000.00** in agreed upon costs with interest from the date of the Final Judgment (December 17, 2022) for a total award of **$2,908,643.80,** bearing interest at the appropriate rates per annum.[19]  Plaintiff shall also recover expert costs in the amount of **$139,992.00.**

---

[1] The parties agreed to resolve the claim of litigation costs for $130,000.  The Court accepts the parties' agreement and awards the same.  Under controlling precedent, the Court declines to award the additional costs, requested after the resolution was reached, of transcripts for depositions taken in this portion of the dispute which related to the amount of fees and costs to award.  *See State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830 (Fla. 1993); *Oruga Corp., Inc. v. AT&T Wireless of Fla., Inc*., 712 So. 2d 1141, 1145 (Fla. 3d DCA 1998) ("Since *Palma*, we have similarly construed section 57.105(1), Florida Statutes, as not permitting an award of *costs* and attorney's fees for time spent litigating the amount of fees. We see no reason why the same result should not obtain in our analysis of section 768.79."); *Obermeyer v. Bank of New York*, 272 So. 3d 430, 430-431 (Fla. 3d DCA 2019); *Eisman v. Ross*, 664 So. 2d 1128, 1129 (Fla. 3d DCA 1995).

[2] Prior to the evidentiary hearing, Plaintiff filed a *Memorandum of Law Supporting Plaintiff's Claim for Attorney's Fees*, Sept. 5, 2024, which argued that *Rowe* "has nothing to do with a proposal for settlement penalty claim for attorney's fees," *id.* at 6, and that because *Rowe* involved a prevailing party statute, not a penalty statute, it is "inapposite" to the Court's determination of a reasonable fee in this case. *Id.* at 5. Plaintiff also argued that the factors in Rule 4-1.5 are inapplicable because the Rule post-dates the decision in *Rowe*. *Id.* at 5. Plaintiff's argues that the opinion in *Coates v. R.J. Reynolds*, 365 So. 3d 353 (Fla. 2023), overturned *Rowe* and upended years of fee jurisprudence. However, *Coates* makes no mention of overruling *Rowe*, and by its own terms, *Coates* expressly permits the Court to consider any and all relevant factors and criteria in assessing a reasonable fee. *See Coates*, 365 So. 3d at 356; *see e.g., Defendant's Response to Plaintiff's Memorandum of Law*, Sept. 10, 2024. In fact, Plaintiff's own experts relied upon the *Rowe* factors and the factors set forth in Rule 4-1.5 in rendering their opinions. T. 167-68; 233-34 ("Q. In forming your opinion, you consider *Rowe* to still be the controlling case in this area? A. I do."). In sum, *Rowe* remains the controlling precedent, and this Court will apply it.

[3] Although the rates for each of these attorneys increased in 2023, they are still far below the rates being requested by Plaintiff's counsel.

[4] The Court recognizes that there was evidence presented that a few of the many timekeepers that recorded time for PM USA had hourly rates that exceeded those charged by PM USA's lead counsel. Plaintiff identifies Stephen Zack, a former President of both the Florida Bar Association and the American Bar Association with over 52 years of practice experience as one such example. However, the Court finds that the rates charged by PM USA's trial counsel, who tried the case twice opposite Plaintiff's counsel, is a better barometer of a reasonable rate "customarily charged in the locality for legal services of a comparable or similar nature," than the hourly rate of an attorney like Mr. Zack, who billed nine hours over a seven-year period and had no discernable role in the case. *See e.g., Philip Morris USA Inc. v. Naugle,* 337 So. 3d 13 (Fla. 4th DCA 2022) (reversing a fee award where Plaintiff's expert opined, among other things, that Plaintiff's counsel "should get at least the hourly rate that the highest paid lawyer on the defense team gets.").

[5] *See* T. 219-20 ("Q. Okay. And you can't cite a single fee order from anywhere in the State of Florida where an attorney was awarded more than $1,050 per hour, correct? A. Correct. Q. And even putting aside tobacco cases, you're not aware of an award of any fee order in a wrongful death case where an attorney was awarded more than $1,050 per hour, correct? A. Correct.").

[6] The Court is also conscious of the fact that the same order that awarded fees to Mr. Padavano and Mr. Brannock, also determined the reasonable hourly rate for well-regarded appellate attorneys who were closer to Mr. Richardson and Mr. Mansell in years of experience and practice. Specifically, the Court heard evidence that the Broward Court awarded attorney Shea Moxon (licensed in 1994), who contributed hundreds of hours of time to that case, an hourly rate of $610 per hour. *See Landi v. R.J. Reynolds et al.*, Order on Plaintiff's Motion for Attorneys' Fees and Costs at 9 (June 9, 2021). This provides a good benchmark for resolving the Parties' competing recommendations on what rate to award.

[7] The Court also gives some limited weight to the hourly rates awarded to attorney Michael Moore, a board-certified admiralty and maritime attorney, in a personal injury case, two weeks before the evidentiary hearing in this case. T2. 103-05; Def. Ex. 67. In that case, Mr. Moore, a "highly regarded lawyer in Miami" was awarded an hourly rate of $625 for his time in 2023 and $675 for his time in 2024, with 40 years of experience. T2. 104-05. While the rates in the instant case will exceed the rates awarded by

our federal colleagues, it would not be reasonable to award Mr. Carr a rate that is nearly *double* what was determined to be Mr. Moore's reasonable rate just a few months ago.

[8]   In *Schertzer*, unlike the case here, the Plaintiff's time was largely kept contemporaneously, and this Court applied a 5% reduction to the hours requested.

[9]   The Court is not persuaded by Mr. Carr's explanation that he views each of these requests as a "piece of work." T2. 208-209.  Mr. Carr's subjective belief of what constitutes a "piece of work," does not justify billing approximately 12 hours of time to find-and-replace one witness's name with another in an existing document.

[10]   This includes 168.6 hours for Mr. Carr, 156.6 hours for Mr. Menendez, 33.4 hours for Mr. Rockenbach, 6.7 hours for Mr. Parafinczuk, and 1.4 hours for Ms. Meacomes.

[11]   *See Memorandum of Law Supporting Plaintiff's Claim for Attorney's Fees*, Sept. 5, 2024 and *Defendant's Response to Plaintiff's Memorandum of Law*, Sept. 10, 2024.

[12]   After the first mistrial, Plaintiff obtained a jury finding of entitlement to punitive damages, but that finding was vacated when the Court granted PM USA's Motion for New Trial on that issue.  *See Omnibus Order on Defendant's Post-Trial Motions*, July 30, 2021; *see also Agreed Order Dismissing Plaintiff's Claims for Punitive Damages*, Dec. 17, 2022.

[13]   This includes approximately 38 hours for Mr. Carr (reduced from 53.7 by his expert) and 12.5 hours for Mr. Rockenbach and Mr. Mansell (not including 5.3 hours of travel time conceded by Mr. Heise).

[14]   The Court considered the testimony of Mr. Diaz, who agreed that Mr. Carr's time for travel should be reduced, but that some time should be awarded because Mr. Carr told Mr. Diaz in an interview that Mr. Carr reviewed materials while driving.  T. 145-49.  Because Mr. Carr did not mention preparation in his entries, and otherwise billed for his preparation separate from his travel to the same hearings, the Court accepts Mr. Heise's approach.

[15]   Mr. Heise, who was licensed to practice law in 1988 (the same year as Mr. Diaz and a year before Mr. Sales) charged $750 per hour for his expert time in this case.  T2. 14.

[16]   As part this total, Mr. Sales also seeks 2.1 hours for his paralegal's time at $185 per hour.  The Court finds that the same rate awarded to the paralegals in this case of $175 per hour is reasonable and awards the same.

[17]   On March 29, 2024, Defendant filed a *Notice of Objection to Plaintiff's Experts' Rates* stating Defendant's objection to the rates being sought and expressing concern for the number of hours expected to be billed. Therefore, Plaintiff and her experts were on notice of these objections.

[18]   As part of the total, Mr. Diaz also requests 7 hours for his paralegal at rates that vary between $200 and $250 per hour.  The Court finds $175 per hour reasonable for this time.  The Court finds that the same rate awarded to the paralegals in this case of $175 per hour is reasonable and awards the same.

[19]   The Court requests that counsel for Plaintiff: (1) check the Court's math, (2) confer with counsel for Defendant to reach an agreement on the appropriate interest rates and interest calculations, and (3)

submit a proposed Final Judgment.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>20th day of December, 2024</u>.

<u>2007-045267-CA-01 12-20-2024 9:39 AM</u>
Hon. Reemberto Diaz

**CIRCUIT COURT JUDGE**
Electronically Signed

---

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

---

**Electronically Served:**
Andrew Brenner, abrenner@bsfllp.com
Arnold & Porter, APKS-PMService@arnoldporter.com
BARD D ROCKENBACH, bdr@flappellatelaw.com
BARD D ROCKENBACH, fa@flappellatelaw.com
Douglas J. Chumbley, dchumbley@carltonfields.com
Douglas J. Chumbley, kalvarez@carltonfields.com
Douglas J. Chumbley, miaecf@cfdom.net
Frank Cruz-Alvarez, Frank.Cruz-Alvarez@arnoldporter.com
Frank Cruz-Alvarez, SHBPMATTYMIAMI@shb.com
Frank Cruz-Alvarez, rachel.forman@arnoldporter.com
Gabriela Romero, gromero@bsfllp.com
Giselle Manseur, gmanseur@kasowitz.com
Giselle Manseur, nrojas@kasowitz.com
Giselle Manseur, Courtnotices@Kasowitz.com
James D Gardner, SHBPMAttyMiami@shb.com
James D Gardner, jgardner@shb.com
James D Gardner, jferber@shb.com
Jason B Wolf Esq, pleadings@parawolf.com
Jeffrey VanVoorhis Mansell, jvm@flappellatelaw.com
Jennifer Kane, jkane@kslaw.com
Jennifer Kane, tholmes@kslaw.com
Jennifer Kane, kstobacco@kslaw.com
John Lyons, jlyons@shb.com

John Lyons, SHBPMAttyMiami@shb.com
John M Lyons, jlyons@bsfllp.com
John M Lyons, jlyons@bsfllp.com
Jose M Menendez, jose@josemenendezlaw.com
Jose M Menendez, vickie@josemenendezlaw.com
Jose M Menendez, service@josemenendezlaw.com
Justin Parafinczuk, JParafinczuk@PWSLawFirm.com
Laura Whitmore, lwhitmore@shb.com
Laura Whitmore, SHBPMAttyMiami@shb.com
Mark Heise, mheise@hsmpa.com
Olga M. Vieira, ovieira@carltonfields.com
Olga M. Vieira, trogers@carltonfields.com
Robert C.L. Vaughan Vaughan, rvaughan@kvllaw.com
Robert C.L. Vaughan Vaughan, emailservice@kvllaw.com
Ryan Witte, rwitte@bsfllp.com
Ryan Witte, afambrini@bsfllp.com
Ryan Witte, pmusa@bsfllp.com
Shook Hardy & Bacon, SHBPMAttyMiami@shb.com
Shook, Hardy & Bacon, maguayo@shb.com
Soneet Kapila, SKapila@kapilatrustee.com
Soneet Kapila, SKapila@kapilamukamal.com
Stephen Austin Carr, ACarr@parawolf.com
Stephen Austin Carr, pleadings@parawolf.com
Ursula Henninger, uhenninger@kslaw.com
Ursula Henninger, kstobacco@kslaw.com


**Physically Served:**