IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BRYAN G. WOOD, and
KAYLEE M. WOOD,

    Plaintiffs,

vs.                                      Case No. 2:21-cv-14172-JEM

PROGRESSIVE SELECT INS. CO.,

    Defendant.
_____/

**PROGRESSIVE'S RESPONSE TO PLAINTIFFS' SECOND RENEWED MOTION FOR ATTORNEY'S FEES AND ADDITIONAL COSTS**

Defendant, PROGRESSIVE SELECT INSURANCE COMPANY ("Progressive"), by and through its undersigned counsel, hereby files its Response to Plaintiffs' Second Verified Renewed Motion for Attorney's Fees and "Additional" Costs [DE 266]. In support thereof, Progressive states as follows:

1. The present action is a common law bad faith action brought by Plaintiffs, BRYAN G. WOOD and KAYLEE M. WOOD ("Plaintiffs"), in relation to Progressive's handling of a bodily injury claim brought by Robert Buckner arising from an October 21, 2015 motor vehicle accident.

2. This matter was previously tried before a jury during the trial period commencing on November 13, 2023. [*See* DE 181].

3. Following the jury trial of this matter, the jury returned a verdict in favor of Plaintiffs. [*See* DE 206].

4. On January 3, 2024, pursuant to the aforementioned jury verdict, the Court entered a Final Judgment in favor of Plaintiffs. [*See* DE 212].

5. On January 31, 2024, Progressive filed a Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. [*See* DE 216].

6. On September 27, 2024, the Court denied the Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial. [DE 229].

7. On October 23, 2024, Progressive appealed the September 27, 2024 Order. [DE 231].

8. The appellate action has been resolved in favor of Plaintiffs. [DE 270].

9. On February 2, 2026, Plaintiffs filed their Second Verified Renewed Motion for Attorney's Fees and Additional Costs ("Motion"). [*See* DE 266].

10. As discussed in the incorporated memorandum of law below, Plaintiffs' claim for a 2.0 multiplier is baseless as the Motion failed to satisfy any of the criteria under *Standard Guaranty Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990). In fact, Plaintiffs have failed to submit any evidentiary materials in support of the claim for a multiplier and have failed to identify any similar bad faith case where a multiplier was awarded.

11. Separately, the requested hourly rates claimed by Plaintiffs' counsel are excessive and unreasonable. At least one court in this district has recently held that the hourly rates claimed by attorneys with background and qualifications that are substantially similar to Plaintiffs' attorneys in the instant case, were excessive and unreasonable. *See Davis v. Nationwide Ins. Co. of Am.*, No. 19-CV-80606, 2022 WL 2341238, at *1 (S.D. Fla. Jan. 28, 2022). Just like in *Davis* where the court reduced the hourly rate of a board-certified insurance litigation expert Todd Stewart, Esq. from $900 to $600 an hour, the Court in the instant matter should reduce the hourly rate of Plaintiffs' attorney, Jeffrey Liggio, from $900 to $600 an hour. Consistent with the findings

and rulings by the Honorable Judge William Matthewman in *Davis*, Progressive respectfully requests that the Court award Plaintiffs' counsel the following hourly rates:

| Attorney/paralegal | Hourly rate |
|---|---|
| Jeffrey Liggio | $600 |
| Jason Cornell | $400 |
| Jesse Isom | $300 |
| Kathy Harmon (paralegal) | $125 |

12. Additionally, Progressive respectfully requests that the Court deny Plaintiffs' request for "additional", non-taxable costs as the request has no basis in law. *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) ("[A] court may only tax costs as authorized by statute."); *Hartford Accident & Indem. Co. v. Crum & Forster Specialty Ins. Co.*, No. 10-CV-24590-JLK, 2012 WL 12866419, at *1 (S.D. Fla. Oct. 31, 2012) ("the Court may only tax those costs authorized by 28 U.S.C. § 1920.").

13. Further, pursuant to this Court's expertise and discretion, any hours billed or tasks deemed unreasonable or not recoverable should likewise be reduced accordingly. *See Laney v. BBB Logistics, Inc.*, 844 F. App'x 203, 210 (11th Cir. 2021) ("It is long settled in this circuit that when a court is determining the reasonableness of attorneys' fees, the court, as a matter of law, is itself an 'expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses.'") (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

14. Based on the foregoing, Progressive respectfully requests that the Court deny Plaintiffs' request for a multiplier and reduce Plaintiffs' claim for attorney's fees and costs, consistent with the arguments set forth herein, and grant such further relief as the Court deems just and proper.

**WHEREFORE**, PROGRESSIVE SELECT INSURANCE COMPANY respectfully requests that the Court deny Plaintiffs' request for a multiplier and reduce Plaintiffs' claim for attorney's fees and costs, consistent with the arguments set forth herein, and grant such further relief as the Court deems just and proper.

## MEMORANDUM OF LAW

### I. Standard of review.

"A reasonable attorney's fee award is 'properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Davis v. Nationwide Ins. Co. of Am.*, No. 19-CV-80606, 2022 WL 2341238, at *1 (S.D. Fla. Jan. 28, 2022) (citing *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). "The product of these two figures is the lodestar …." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in [*Johnson*]." *Bivins*, 548 F.3d at 1350 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The 12 factors are as follows:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

*Bivins*, 548 F.3d at 1350, n.2.

**II.    Plaintiffs' Motion entirely lacks any basis supporting Plaintiffs' request for a multiplier.**

"Sometimes courts apply to the lodestar a multiplier, also known as an enhancement or an upward adjustment, to reward counsel on top of their hourly rates." *Davis v. Nationwide Ins. Co. of Am.*, No. 19-CV-80606, 2022 WL 2341238, at *5 (S.D. Fla. Jan. 28, 2022) (quoting *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019)).

The Supreme Court of the United States has explained that "there is a 'strong presumption' that the lodestar figure is reasonable" and this presumption is overcome only in "rare and exceptional circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) ("[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel."). This presumption generally remains, even in a complex case, because the novelty and complexity of the case is typically reflected in the number of hours reasonably spent on the litigation. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985) ("The 'novelty and difficulty of the question involved' should normally be reflected by the number of hours reasonably expended on the litigation.").

The concept of a fee multiplier set forth in *Rowe* was later refined by the Florida Supreme Court in *Standard Guaranty Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990). Under *Quanstrom*, the Florida Supreme Court set forth factors to be considered in evaluating the need for a multiplier, including: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable. *Id.* at 834.

It is well-settled under Florida law that "before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff

would have faced substantial difficulties in finding counsel in the local or other relevant market." *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990); *see also Tetrault v. Fairchild*, 799 So. 2d 226, 234 (Fla. 5th DCA 2001) ("it must be proved that but for the multiplier, plaintiff could not have obtained competent counsel in the area...whether plaintiff's counsel would have taken the case on that basis is immaterial.").

In the instant case, Plaintiffs have requested a 2.0 multiplier in relation to their claim for attorney's fees and costs. [DE 266 at 9-12]. However, an award of any multiplier, let alone a 2.0 multiplier, is not warranted because Plaintiffs have not presented any substantial, competent evidence in support of the request.

In a brief paragraph, Plaintiffs' Motion makes only conclusory remarks that Plaintiffs "would have been unable to fund this litigation on a non-contingency basis"; and that this case was purportedly complex on the grounds that Plaintiffs' counsel needed to subpoena Progressive's in-house counsel's litigation file and the number of attorneys involved in the case. [*See* DE 266 at 10-11]. However, Plaintiffs' conclusory assertions in that regard are entirely unsupported by any evidence other than Plaintiffs' self-serving affidavits. [*See* DE 266-6; DE 266-7]. Importantly, Plaintiffs' affidavits do not even attempt to allege any facts relevant to the analysis under *Quanstrom*. Rather, the affidavits vaguely assert that Plaintiffs asked attorney John Richards to recommend them a bad faith lawyer, and attorney John Richards recommended Jeff Liggio. [DE 266-6 at 2-3; DE 266-7 at 2-3]. Plaintiffs' Motion entirely fails to point to any competent evidence whatsoever establishing that Plaintiffs had difficulties in finding competent counsel to represent them, that the relevant market required a contingency fee multiplier, whether the attorney was able to mitigate the risk of nonpayment, or whether any of the factors set forth in *Rowe* warrant a multiplier. [DE 266].

With respect to the first *Quanstrom* factor, Florida courts have consistently held that a multiplier will not be awarded where there is lack of evidence showing that the client had difficulty in obtaining competent counsel. *See Sun Bank of Ocala v. Ford*, 564 So. 2d 1078 (Fla. 1990) (in action on promissory note, court properly refused to apply multiplier in awarding fees to bank absent evidence that commercial banks had difficulty finding attorneys to represent them); *Deutsche Bank National Trust Co., as Trust for Morgan Stanley Home Equity Loan Trust 2007-1 v. Pereira*, 352 So. 3d 3 (Fla. 4th DCA 2022) (in foreclosure action, court held that there was no evidence to establish that mortgagors faced any substantial difficulties in finding competent counsel as required for trial court to apply contingency risk multiplier to award attorneys' fees); *Citizens Property Insurance Corp. v. Anderson*, 241 So. 3d 221 (Fla. 2d DCA 2018) (in action on breach of contract claim, court reversed contingency fee multiplier when lower court failed to make specific findings that insured had difficulty finding attorney to represent her and that relevant market required contingency fee). Plaintiffs have presented absolutely no evidence establishing that they had difficulty in finding competent counsel. As mentioned above, the only evidence that Plaintiffs submitted in support of the claim are Plaintiffs' affidavits. However, the affidavits do not even attempt to argue that Plaintiffs experienced difficulty in obtaining competent counsel. Rather, the affidavits state that Plaintiffs' attorney in the underlying action, John Richards, recommended attorney Jeff Liggio to Plaintiffs. [DE 266-6 at 2-3; DE 266-7 at 2-3]. Pursuant to the above-cited Florida law, Plaintiffs' request for a multiplier must be denied on this basis alone.

Furthermore, under *Quanstrom*, Plaintiffs have entirely failed to present any evidence whatsoever even remotely addressing the issue of whether the relevant market requires a contingency fee multiplier to obtain competent counsel. *Quanstrom*, 555 So. 2d at 834. As stated above, Plaintiffs' Motion only makes conclusory assertions that this case was complex and that

7

Plaintiffs "would have been unable to fund this litigation on a non-contingency basis." [*See* DE 266 at 8-9]. However, Plaintiffs' Motion is entirely devoid of any evidence applicable to the first *Quanstrom* factor. Florida courts have held that where a movant fails to present any evidence with respect to the first *Quanstrom* factor, "[t]his alone is fatal to Plaintiff's request for a fee multiplier because '[i]f there is no evidence that the relevant market required a contingency fee multiplier …, then a multiplier should not be awarded.'" *Davis*, 2022 WL 2341238, at *5 (quoting *USAA Cas. Ins. Co. v. Prime Care Chiropractic Enters, P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012)). Plaintiffs' request for a multiplier must be denied on this basis alone for failure to furnish any evidence in relation to the first *Quanstrom* factor.

With respect to the second *Quanstrom* factor, Plaintiffs have presented absolutely no evidence whatsoever establishing that Plaintiffs' attorneys in this matter were not able to "mitigate the risk of nonpayment in any way." *Quanstrom*, 555 So. 2d at 834. Once again, Plaintiffs' Motion makes only vague and conclusory assertions regarding other matters such as the purported complexity of the case, but the Motion does not even attempt to present, discuss, or cite to any evidence in support of the second *Quanstrom* factor. [*See* DE 266 at 9-12].

Similarly, Plaintiffs' Motion does not discuss or even attempt to claim that any of the *Rowe* factors are applicable and have been met in this case. Even if the Court were to accept the only possible argument in favor of Plaintiffs that Plaintiffs' counsel was successful in obtaining a good result in this case, that alone, without more, is insufficient to justify an award of a multiplier. *See Davis*, 2022 WL 2341238, at *6 (even assuming that the result obtained was good, it is not enough to justify an award of a multiplier).

The instant bad faith action did not involve any complex or novel issues requiring counsel of a specialized legal background or knowledge. Nor do Plaintiffs direct this Court to examples of

8

bad faith cases where an award of a multiplier was warranted. This case is a straightforward third-party bad faith action against Progressive arising out of the October 21, 2015 motor vehicle accident, wherein Kaylee Wood's vehicle collided with a vehicle operated by Robert Buckner. Following the accident, Mr. Buckner presented a claim against the policy of insurance issued to Kaylee Wood's parents. However, Mr. Buckner's claim did not settle, which prompted Mr. Buckner to file a negligence lawsuit against the Woods in relation to the subject accident. Mr. Buckner ultimately obtained a judgment against the Woods in the underlying negligence action, and the Woods filed the instant action against Progressive alleging that Progressive handled the subject insurance claim in bad faith.

As evidenced by the procedural history of this case, the instant lawsuit is in no way a complicated or unique bad faith suit. On the contrary, this lawsuit is a typical, straightforward bad faith action based on the allegations of a delay in payment of insurance benefits, which is routinely brought against liability carriers in Florida. Plaintiffs have not provided any case law or any competent evidence whatsoever in support of their claim for a multiplier. Because Plaintiffs have failed to meet their burden under the applicable law, Plaintiffs' request for a multiplier must be denied.

### III. The hourly rates requested by Plaintiffs' attorneys are excessive and unreasonable.

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1399 (11th Cir. 1988). "Acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work." *Freeman v. Rice*, 2012 WL 12947682, at *3 (S.D. Fla. Feb.

9

7, 2012) (citing *Norman*, 836 F.2d at 1299). The party seeking fees must provide more than an affidavit of the attorney performing the work to meet their burden. *Norman*, 836 F.2d at 1299.

In support of their claim for attorney's fees and costs in this matter, Plaintiffs have submitted the billing records of Plaintiffs' counsel [*see* DE 266-5], curriculum vitae only for Jeff Liggio [DE 266-3], a case list only for Mr. Liggio [DE 266-4], an affidavit by attorney Roger Messer [DE 267-1], and an affidavit by attorney David Baron [DE 267-2]. Mr. Messer's affidavit asserts in a conclusory fashion that Mr. Liggio's hourly rate is justified due to Mr. Liggio's qualifications, but the affidavit fails to provide any basis for the rate. [DE 267-1]. Mr. Messer does not attempt to allege that he is an expert in this field and has the required background or qualifications. As such, Mr. Messer's affidavit appears to be irrelevant to the issue of hourly rates.

Although Mr. Baron opines that the $900 hourly rate for attorney Mr. Liggio is appropriate, his opinion is based on a prior award of $750/hour in an unrelated matter. Notably, Mr. Baron's affidavit fails to discuss the nature of the action in which that hourly rate was awarded. The case relied upon by Mr. Baron appears to be entirely unrelated to the instant case as the named defendant in that action was a mortgage company. To the extent that Mr. Baron's affidavit fails to explain how the award of $750/hour in an action against a mortgage company supports the requested rate of $900/hour in the instant insurance bad faith case, the affidavit is not helpful to the determination of hourly rates and must be rejected. Moreover, Mr. Baron's affidavit fails to address the hourly rates claimed by any attorneys other than Mr. Liggio. As such, there is absolutely no competent evidence before the Court that may support the hourly rates claimed by Plaintiffs' attorneys in this matter.

The following hourly rates claimed by Plaintiffs' attorneys are excessive and unreasonable:

1. Jeffrey Liggio, Esq.          $900/hour

    2. Jason Cornell, Esq.             $550/hour

    3. Jesse Isom, Esq.               $350/hour

    4. Kathy Harmon (paralegal)     $225/hour

Just like the plaintiff's attorney, Todd S. Stewart, in *Davis*, attorney Jeffrey Liggio in the instant case is claiming an hourly rate of $900/hour. *See Davis*, 2022 WL 2341238, at *5. Progressive respectfully submits that the experience and qualifications of Mr. Stewart and Mr. Liggio as well as the analysis pertaining to the hourly rates as to these two attorneys are directly analogous for the purposes of a motion for attorney's fees and costs. Just like attorney Stewart in *Davis*, attorney Liggio is a Board-Certified Civil Trial attorney who specializes in the area of insurance disputes and personal injury cases. *Davis*, 2022 WL 2341238, at *2. Both attorneys practice out of Palm Beach County, Florida. *Id.*

In awarding Mr. Stewart $600/hour in *Davis*, the Honorable Judge William Matthewman of the Southern District of Florida reasoned as follows:

> Having considered information contained in the various filings and the *Johnson* factors, and based upon the Undersigned's own knowledge and experience, the Undersigned concludes the paralegal rate of $125 sought by Plaintiff is reasonable. However, the requested rate of Mr. Stewart of $900 is excessive. **The Court is familiar with the hourly rates charged by the top civil litigators in Palm Beach County, and $900 per hour is unreasonable, especially in a bad faith insurance case.** The Court shall instead, after considering all relevant factors and reviewing the entire docket, award Mr. Stewart an hourly rate of $600 per hour. South Florida attorney hourly rates seem to be a solid group with a large percentage in the $200-$300 range, a second tier of $450-to $500-an-hour attorneys and a handful in the $600 range.

*Davis*, 2022 WL 2341238, at *3 (emphasis added) (citations and quotations omitted).

Progressive respectfully submits that the Court's ruling with respect to the hourly rates claimed by Plaintiffs' attorneys must be consistent with the opinion in *Davis*. Just like Mr. Stewart in *Davis*, Mr. Liggio is a Board-Certified attorney who is practicing out of the same locality, Palm

11

Beach County. Just like attorney Stewart in *Davis*, Mr. Liggio has experience in litigating insurance disputes and personal injury cases. Just like in *Davis*, Mr. Liggio's claimed $900/hour rate is "unreasonable, especially in a bad faith insurance case." *Davis*, 2022 WL 2341238, at *3. Consistent with the Southern District Court's opinion in *Davis*, Progressive respectfully requests that the Court award the following hourly rates to Plaintiffs' attorneys:

| Attorney/paralegal | Hourly rate |
| --- | --- |
| Jeffrey Liggio | $600 |
| Jason Cornell | $400 |
| Jesse Isom | $300 |
| Kathy Harmon (paralegal) | $125 |

### IV. Plaintiffs' claim for "additional", non-taxable costs has no basis in law.

"[A] court may only tax costs as authorized by statute." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987)); *see also Hartford Accident & Indem. Co. v. Crum & Forster Specialty Ins. Co.*, No. 10-CV-24590-JLK, 2012 WL 12866419, at *1 (S.D. Fla. Oct. 31, 2012) ("the Court may only tax those costs authorized by 28 U.S.C. § 1920."); *Crisp v. Islamorada Partners, LLC*, No. 11-10007-CIV, 2012 WL 13015036, at *1 (S.D. Fla. Sept. 10, 2012), *report and recommendation adopted sub nom. Crisp v. Islamorada Partner, LLC*, No. 11-10007-CIV, 2012 WL 13015037 (S.D. Fla. Sept. 25, 2012) ("the Court may only tax those costs authorized by the statute."); *Blanco v. Biscayne Wine Grp., LLC*, No. 10-23988-CIV, 2014 WL 2653922, at *6 (S.D. Fla. June 13, 2014) ("In the exercise of sound discretion, trial courts are accorded great latitude ascertaining taxable costs. However, in exercising its discretion to tax costs, absent explicit statutory authorization, federal courts are limited to those costs specifically enumerated in 28 U.S.C. § 1920.").

In the Motion, Plaintiffs have requested "additional", non-taxable costs relating to the following: (1) costs arising from the services provided by Plaintiffs' expert, Daniel Doucette; (2) mediation costs; (3) costs relating to Plaintiffs' hotel accommodations; and (4) travel costs relating to Plaintiffs' Brightline train tickets. [DE 266 at 12; DE 266-9].

However, none of these claimed "additional", non-taxable costs are recoverable under Section 1920. *See* 28 U.S.C § 1920. Plaintiffs have previously sought recovery of their taxable costs pursuant to U.S.C. § 1920, which they will recover to the extent permitted by the statute. [*See* DE 217]. With respect to the instant Motion, Plaintiffs have presented no legal authority whatsoever authorizing recovery of any "additional", non-taxable costs in this matter.

The governing inquiry on this issue is whether there are any statutes that authorize Plaintiffs to seek the requested "additional", non-taxable costs. *See U.S. E.E.O.C.*, 213 F.3d at 620 ("a court **may only** tax costs as authorized by **statute**." (emphasis added)). The only "statutes" that are cited in Plaintiffs' Motion are Fla. Stat. § 57.041 and Fla. Stat. § 624.155(4). [DE 266 at 12].

However, Plaintiffs have presented absolutely no legal authority whatsoever holding that Fla. Stat. § 57.041 expands the costs permitted under 28 U.S.C. § 1920. To the contrary, courts in this district have held that federal statutes govern taxation of costs in diversity actions pursuant to the United States Supreme Court's holding in *Shady Grove*, and that Fla. Stat. § 57.041 does not permit a district court to award costs beyond those authorized under Section 1920. *See Collazo v. Progressive Select Ins. Co.*, No. 20-CV-25302, 2022 WL 18144067, at *3 (S.D. Fla. Dec. 19, 2022) (rejecting the cost claim under Fla. Stat. § 57.041 and holding that under the U.S. Supreme Court's holding in *Shady Grove*, "**[i]n diversity cases, Section 57.041, Florida Statutes does not permit a district court to award costs beyond those enumerated in 28 U.S.C. § 1920**.")

(emphasis added), *report and recommendation adopted sub nom. Collazo v. Progressive Select Ins. Co.*, No. 20-25302-CIV, 2023 WL 122614 (S.D. Fla. Jan. 6, 2023).

Similarly, Fla. Stat. § 624.155(4) cannot be reasonably read to allow any costs beyond those permitted under 28 U.S.C. § 1920 as the statute does not even address taxation of costs. Fla. Stat. § 624.155(4) states as follows:

> (4)(a) An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim.
>
> (b) If an insurer does not tender the lesser of the policy limits or the amount demanded by the claimant within the 90-day period provided in paragraph (a), the existence of the 90-day period and that no bad faith action could lie had the insurer tendered the lesser of policy limits or the amount demanded by the claimant pursuant to paragraph (a) is inadmissible in any action seeking to establish bad faith on the part of the insurer.
>
> (c) If the insurer fails to tender pursuant to paragraph (a) within the 90-day period, any applicable statute of limitations is extended for an additional 90 days.

Fla. Stat. § 624.155(4). A plain reading of Fla. Stat. § 624.155(4) quickly establishes that Plaintiffs' reliance on the statute is entirely misplaced, and the statute cannot be reasonably construed to allow for any "additional", non-taxable costs claimed by Plaintiffs in the instant matter. To the extent that Plaintiffs' Motion may be interpreted as claiming otherwise, Progressive respectfully requests that the Court adopt the analysis employed by the *Collazo* court and find that, under the U.S. Supreme Court's holding in *Shady Grove*, Fla. Stat. § 624.155(4) does not permit a district court to award costs beyond those authorized under Section 1920. *See Collazo*, 2022 WL 18144067, at *3.

Furthermore, Plaintiffs' Motion cites to an Order on a motion to dismiss in *Apostolic Pentecostal Church of Panama City, Inc. v. Scottsdale Ins. Co.*, No. 5:21CV32-MW/MJF, 2021

14

WL 4144775, at *1 (N.D. Fla. Apr. 9, 2021). [DE 266 at 12]. To the extent that Plaintiffs attempt to rely on the case in support of their claim for "additional", non-taxable costs in this matter, the case is entirely irrelevant to any issues raised in Plaintiffs' Motion as the court's adjudication of the insurer's motion to dismiss in *Apostolic Pentecostal Church* has absolutely no relevance to any of the issues pending before the Court.

Based on the foregoing, Plaintiffs' request for "additional" costs must be rejected pursuant to the well-settled law governing this issue. *See U.S. E.E.O.C.*, 213 F.3d at 620; *Hartford Accident*, 2012 WL 12866419, at *1; *Crisp*, 2012 WL 13015036, at *1; *Blanco*, 2014 WL 2653922, at *6.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of February 2026, the foregoing document was filed and served this day on all counsel of record identified on the attached Service List in the manner specified.

               **s/ MAX TSOY**
               **ADAM A. DUKE**
               Florida Bar No.: 0055734
               aduke@flalawyer.net
               **RICHARD A. WELDY**
               Florida Bar No.: 0111811
               rweldy@flalawyer.net
               **MAX TSOY**
               Florida Bar No.: 111796
               mtsoy@flalawyer.net
               Young, Bill, Boles, Palmer,
               Duke & Thompson, P.A.
               2 South Biscayne Boulevard
               Suite 3195
               Miami, Florida 33131
               Telephone: (305) 222-7720
               Facsimile: (305) 492-7729
               *Attorneys for Progressive*

**<u>SERVICE LIST</u>**
**BRYAN G. WOOD and KAYLEE M. WOOD v. PROGRESSIVE SELECT INS. CO.**
**Case No. 2:21-cv-14172-JEM**

**JEFFREY M. LIGGIO, ESQ.**
LIGGIO LAW
1615 Forum Place
Suite 3B
West Palm Beach, FL 33401
jliggio@liggiolaw.com
ncuevas@liggiolaw.com

*Via Electronic Mail and/or Regular U.S. Mail*
*Attorneys for Plaintiff*