**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-14172-CIV-MARTINEZ/MAYNARD**

**BRYAN G. WOOD,**
**and KAYLEE M. WOOD,**

**Plaintiffs,**

**v.**

**PROGRESSIVE SELECT**
**INSURANCE CO.,**

**Defendant.**
**_______________________________/**

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon Plaintiffs' Second Verified Renewed Motion for Attorney's Fees and Additional Costs ("Motion"). DE 266. U.S. District Judge Jose E. Martinez has referred this Motion to me for appropriate disposition. DE 269. Having reviewed the Motion, Defendant's Response, DE 271, Plaintiffs' Reply, DE 278, the supporting materials, the record, and the applicable law, I respectfully **RECOMMEND** that the Motion be **GRANTED IN PART AND DENIED IN PART** as set forth more fully below.

## BACKGROUND

This is an insurance bad-faith action against Defendant Progressive Select Insurance Company ("Progressive") arising from its handling of a bodily injury claim asserted by an injured driver following an October 2015 motor vehicle accident. Plaintiffs Bryan Wood and Kaylee Wood are father and daughter, respectively (collectively, the "Woods"). At the time of

the accident, Ms. Wood was a minor and the at-fault driver. The underlying claim resulted in an excess judgment against the Woods, who were insured by Progressive at the time.

The Woods originally filed this action in state court. In April 2021, Progressive removed the case to this court on diversity jurisdiction grounds. DE 1. The case was initially set for trial in November 2022 but was continued due to an approaching storm. In May 2023, the matter was tried in Fort Pierce over five days; however, the jury could not reach a verdict. DE 145. In November 2023, the case was retried in Miami over four days. On November 16, 2023, the jury returned a verdict in favor of the Woods and against Progressive. DE 206. On January 3, 2024, the Court entered final judgment in favor of the Woods consistent with the verdict and reserved jurisdiction to tax costs against Progressive. DE 213. The Court subsequently denied Progressive's motion for judgment notwithstanding the verdict and motion for new trial. DE 229.

On October 23, 2024, Progressive appealed the final judgment and denial of its post-trial motions. DE 231. On November 5, 2025, the Eleventh Circuit affirmed the Court's final judgment and denial of Progressive's post-trial motions. DE 270. The mandate issued on February 5, 2026. *Id.*

The Woods seek $1,189,843.40 in trial-level attorney's fees,[1] based on a lodestar of $594,921.70 and a requested contingency-risk multiplier of 2.0, plus $35,585.29 in costs for expert witness fees, mediation fees, hotel accommodations, and transportation costs. DE 266 at 2, 5-12. Progressive does not dispute that the Woods are entitled to recover attorney's fees

[1] The Woods separately moved for appellate-level attorney's fees following the appeal. DE 268. In a separate report, I recommended that the motion be partially granted and that Plaintiffs be awarded appellate attorney's fees of $31,925. DE 280. That report has been adopted in full. DE 281. Accordingly, this report concerns only the request for trial-level attorney's fees and additional costs.

but it challenges the reasonableness of the requested hourly rates and opposes application of a multiplier. DE 271 at 5-12. Progressive also argues that the Woods are not entitled to recover the additional costs they seek. *Id.* at 12-15. The Woods have submitted billing records for four timekeepers, affidavits by each Plaintiff, and affidavits from two attorneys concerning the fee request, the circumstances of the representation, and the requested multiplier.

**DISCUSSION**

Below, I first address the Woods' entitlement to trial-level attorney's fees. Next, I consider the reasonableness of the requested fees, including the reasonable hourly rates by reasonable hours expended, and the resulting lodestar. I will then turn to the Woods' request for a contingency-risk multiplier, before turning last to the Woods' request for additional costs.

***1. Entitlement to Trial-Level Attorney's Fees***

As the prevailing parties, the Woods seek attorney's fees incurred in litigating this bad-faith action under Florida law. Progressive does not dispute the Woods' entitlement to recover their reasonable trial-level attorney's fees.

In diversity jurisdiction cases, like this one, a federal court must apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state"). Statutes allowing for the recovery of attorney's fees are substantive law. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002) ("[I]t is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes.").

Consistent with these principles, Florida's civil remedy statute provides that an insurer that loses a bad-faith action at trial or on appeal "shall be liable for damages, together with court

costs and reasonable attorney's fees incurred by the plaintiff." Fla. Stat. § 624.155(7). Courts have recognized that a prevailing plaintiff in a statutory bad-faith action may recover reasonable attorney's fees under this Florida's fee-shifting statute. *See Collazo v. Progressive Select Ins. Co.*, Case No. 23-22953-Civ-Moore/Louis, 2025 WL 2816883, at *2 (S.D. Fla. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2816881 (S.D. Fla. Aug. 26, 2025).

Because the Woods indisputably prevailed on their statutory bad-faith claim, they are entitled to recover their reasonable trial-level attorney's fees.

***2. A Reasonable Award of Attorney's Fees***

With entitlement decided, I turn next to the reasonable amount of fees to be awarded. Under Florida law and Eleventh Circuit precedent, courts determine a reasonable attorney's fee using the lodestar method, which provides an objective estimate of the value of an attorney's services. Under this method, a reasonable fee is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 802 (11th Cir. 2014) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151-52 (Fla. 1985)); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The lodestar is "strongly presumed to be reasonable." *Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 804 (11th Cir. 2020) (citations omitted).

The fee applicant bears the burden of establishing the reasonableness of the requested fees and documenting the appropriate hours and hourly rates. *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). Supporting evidence must be sufficiently detailed to permit the Court to assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. Fee applicants must also exercise billing judgment and

exclude hours that are excessive, redundant, or otherwise unnecessary. *Barnes*, 168 F.3d at 428 (citing *Hensley*, 461 U.S. at 434). If the requested fees appear excessive or inadequately supported, a court may rely on its own knowledge and experience in determining a reasonable award. *See Norman*, 836 F.2d at 1303; *Collazo, 2025 WL 2816883, at *4; Ramirez v. Scottsdale Ins. Co.*, Case No. 20-22324-Civ-Martinez/Becerra, 2022 WL 4096728, at *5 (S.D. Fla. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 4094562 (S.D. Fla. Sept. 7, 2022). In doing so, courts need not become "green-eyeshade accountants" and instead need only achieve "rough justice," rather than "auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, the Woods specifically seek a lodestar of $594,921.70. DE 266 at 5. My calculation based on their figures provided, however, yields a different amount. Multiplying the claimed hourly rate for each timekeeper by the hours expended as identified in the Motion, DE 266 at 6-9, results in the following:

| **Name/Position** | **Requested Hourly Rate** | **Hours** | **Total** |
|---|---|---|---|
| Jeffrey Liggio/Lead Trial Counsel | $900 | 277.05 | $249,345.00 |
| Jason Cornell/Trial Counsel | $550 | 485.63 | $267,096.50 |
| Jesse Isom/Trial Counsel | $350 | 109.67 | $38,384.50 |
| Kathy Harmon/Paralegal | $225 | 127.73 | $28,739.25 |
| | | 1,000.08 | $583,565.25 |

Thus, based on the rates and hours expressly set forth in the Motion, the proposed lodestar calculates to $583,565.25. This calculated amount is $11,356.45 less than the $594,921.70 as stated in the Motion. Throughout the briefing, no party acknowledges this fairly significant discrepancy, much less identifies its source. Because courts are not required to

independently reconstruct or audit the billing records to reconcile mathematical discrepancies in fee requests, *see Fox*, 563 U.S. at 838 (2011), I will use $583,565.25 as the baseline lodestar for purposes of my analysis.

In support of their fee request, the Woods submit (1) the resume of lead trial counsel Jeffrey Liggio, DE 266-3; (2) a Westlaw-generated list of cases with which Mr. Liggio has been affiliated, DE 266-4; (3) ten pages of billing records for all four timekeepers, DE 266-5; (4) an affidavit from attorney Roger Messer, who represented the injured driver in the underlying state suit that resulted in an excess judgment against the Woods, DE 267-1; and (5) an affidavit and supplemental affidavit from board-certified civil trial attorney David Baron addressing the reasonableness of the requested hourly rates and hours, DE 278-2, DE 267-2. I consider these materials, together with the record and my knowledge of prevailing rates in this District, in assessing reasonableness.

***a. Reasonable Hourly Rates***

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *see also Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 737 n.1 (11th Cir. 1988). In determining a reasonable rate, courts routinely consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the

client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–20 (5th Cir. 1974); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985) (holding that Florida courts should consider the factors in Florida's Rule of Professional Conduct[2] governing reasonable attorneys' fees but observing that the factors "are essentially the same as those considered by the federal courts in setting reasonable attorneys' fees") (citing to *Johnson*, 488 F.2d 714).

Progressive challenges the reasonableness of the requested hourly rates and proposes rates of $600 for Mr. Liggio, $400 for Mr. Cornell, $300 for Mr. Isom, and $125 for Ms. Harmon. DE 271 at 12. Progressive maintains that the Woods' requested rates are excessive, unreasonable, and insufficiently supported. *Id.* at 10.

Notably, Progressive did not provide the billing rates of its own attorneys as required by Local Rule 7.3(a). Nonetheless, I have independently reviewed the requested rates and conclude that reductions are warranted. *See* S.D. Fla. L.R. 7.3(a) ("If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency or other arrangements that could change the effective hourly rate."); *Norman*, 836 F.2d at 1303 ("[T]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value").

---

[2] Florida Rule of Professional Conduct 4-1.5(b) identifies several factors relevant to determining a reasonable fee, including: the time and labor required; the novelty and difficulty of the issues presented; the skill required to perform the services; customary fees charged for similar services in the relevant market; the amount involved and results obtained; any time constraints imposed by the representation; the nature of the attorney-client relationship; the experience, reputation, and ability of the attorneys performing the work; and whether the fee arrangement is fixed or contingent.

First, the Woods seek $900 per hour for attorney Jeffrey Liggio. Mr. Liggio is a board-certified civil trial attorney who has been a member of The Florida Bar since 1982. He is a past president of the Florida Justice Association and a current member of several professional legal associations. His firm has extensive experience in complex civil litigation, including insurance disputes, statutory and common-law bad-faith litigation, and class actions.

In this action, Mr. Liggio served as lead trial counsel and had primary responsibility for discovery, including multiple depositions. He attended or conducted the depositions of seven individuals, including an expert retained by Progressive. He was also primarily responsible for retaining and preparing the Woods' trial expert, who testified at both the May 2023 trial in Fort Pierce and the November 2023 retrial in Miami, as well as deposing Progressive's expert. Mr. Liggio was primarily responsible for trial preparation and served as lead counsel at both trials, working with attorney Jason Cornell at the first trial and attorney Jesse Isom at the retrial. Following trial, Mr. Liggio had primary responsibility for the post-trial proceedings and coordinated with appellate counsel throughout the appeal to the Eleventh Circuit.

Progressive proposes reducing Mr. Liggio's hourly rate to $600. Considering Mr. Liggio's experience and qualifications, his substantial role in litigating this case through two jury trials, the nature of the statutory bad faith action, and comparable fee awards in this District, I find that an hourly rate of $700 is reasonable. *See Gulf Bldg., LLC v. Phil. Idem. Ins. Co.,* 2024 WL 309026, at *7 (S.D. Fla. Jan. 8, 2024), *report and recommendation adopted*, 2024 WL 307623 (S.D. Fla. Jan. 26, 2024) (reducing the requested rate for a highly experienced attorney from $916 to $700 and collecting cases); *Collazo v. Progressive Select Ins. Co.,* 2025 WL 2816883, at *6 (S.D. Fla. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2816881 (S.D. Fla. Aug. 26, 2025) (reducing the requested rate for a highly experienced

attorney with significant insurance-litigation experience who had tried a similar bad-faith action against Progressive from $900 to $700).

Next, the Woods seek $550 per hour for attorney Jason Cornell. Mr. Cornell was admitted to The Delaware Bar in 1999 and The Florida Bar in 2010. He previously practiced at a large national commercial litigation firm and serves on the board of the Palm Beach County Justice Association. In this action, Mr. Cornell assisted with the litigation from August 2020 through the May 2023 trial in Fort Pierce. His work included researching legal issues and drafting pleadings and motions, including a motion to remand, responses to motions to dismiss, discovery motions, and motions concerning trial deadlines. He attended the depositions of the Woods and the Woods' expert, participated in mediation, and engaged in trial preparation. He also attended the first trial in May 2023 and examined several witnesses.

Progressive proposes reducing Mr. Cornell's hourly rate to $400. Considering Mr. Cornell's experience, his substantial involvement in the litigation and first trial, and comparable fee awards in this District, I find that an hourly rate of $500 is reasonable. *See Collazo*, 2025 WL 2816883, at *6-7 (reducing requested hourly rate from $650 to $500 for partner with 15 years of litigation experience handling insurance disputes who had primary responsibility for day-to-day management of the case and was involved in case strategy, depositions, motion practice, and trial preparation); *id.* at *6-7 (reducing requested hourly rates of $510 for associates with several years of litigation experience to $350).

Next, the Woods seek $350 per hour for attorney Jesse Isom. Mr. Isom has been a member of The Florida Bar since 2012. Before joining his current firm, he served as an assistant public defender for over eight years, including three years in the appellate division. He also litigated civil-rights actions under 42 U.S.C. § 1983 in federal courts nationwide while working

for a nonprofit organization and has tried more than 30 cases before juries. In this action, Mr. Isom was involved in preparing the case for the November 2023 retrial in Miami. At trial, he conducted the direct examinations of the Woods and the Woods' expert and assisted with case strategy and preparation for the cross-examination of Progressive's witnesses.

Progressive proposes reducing Mr. Isom's hourly rate to $300. Considering Mr. Isom's experience and qualifications, his role in preparing for and participating in the retrial, and comparable fee awards in this District, I agree with this proposed reduction and find an hourly rate of $300 reasonable. *See Collazo*, at *7 (S.D. Fla. Aug. 11, 2025) (reducing requested hourly rates for associates with several years of litigation experience, including an attorney with prior prosecutorial and insurance-defense experience to $350).

Lastly, the Woods seek $225 per hour for Florida registered paralegal Kathy Harmon. Ms. Harmon has worked in the legal field since May 1978 and obtained a degree in paralegal studies from Palm Beach State College in 1983. She joined the Liggio Law Firm in September 1997 and became a Florida registered paralegal in March 2008. She is a paralegal member of the Palm Beach County Justice Association and the Florida Justice Association and has extensive experience in insurance litigation, including bad-faith matters.

Ms. Harmon worked on this matter from its inception through both trials. Her responsibilities included communicating with the Woods throughout the litigation; reviewing and drafting documents relating to discovery requests and production; preparing witness and exhibit lists; locating witnesses; preparing exhibit folders and trial notebooks for counsel and the Clerk; and assisting counsel with all aspects of trial preparation. She also attended both trials.

Progressive proposes reducing Ms. Harmon's hourly rate to $125. Considering Ms. Harmon's experience and qualifications, her longstanding work in insurance litigation, and the nature of the paralegal services performed in this case, I find that an hourly rate of $150 is reasonable. *See Collazo*, 2025 WL 2816883, at *7 (awarding $145 per hour for experienced paralegals with experience ranging from 12 to 28 years); *Wood v. Progressive Select Ins. Co.*, 2026 WL 1910952, at *4 (S.D. Fla. June 17, 2026), *report and recommendation adopted*, 2026 WL 1909907 (S.D. Fla. July 2, 2026) (awarding $150 per hour for experienced Florida registered paralegal who handled tasks associated with the appeal in this case, had worked in the legal field since 2012, and became a Florida registered paralegal in 2015).

For the above reasons, I recommend that the requested hourly rates be reduced as follows:

| **Name/Position** | **Requested Rate** | **Reduced Rate** |
|---|---|---|
| Jeffrey Liggio/Lead Trial Counsel | $900 | $700 |
| Jason Cornell/Trial Counsel | $550 | $500 |
| Jesse Isom/Trial Counsel | $350 | $300 |
| Kathy Harmon/Paralegal | $225 | $150 |

***b. Number of Hours Expended***

I next consider the reasonableness of the hours expended. Reasonable hours are those that "would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins*, 847 F.2d at 738. Fee applicants must exercise billing judgment and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Id.* Accordingly, when a fee request

is unreasonably high, the court may either conduct an hour-by-hour analysis or impose an across-the-board reduction, but it cannot do both. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

The Woods' ten-page billing journal, DE 266-5, reflects that the three attorneys and one paralegal collectively spent 1,000 hours litigating this action. Progressive does not identify any specific time entry as excessive, duplicative, unnecessary, or otherwise unreasonable. Nor does Progressive request a specific reduction in the hours claimed. Nevertheless, I independently reviewed the billing records and find that the hours expended were reasonable.

The record reflects that this was a substantial and protracted litigation. The action was first filed in state court before being removed to this court in April 2021. It proceeded through extensive discovery, including numerous depositions and expert discovery, and summary judgment briefing. After being reset due to an approaching storm, the case was tried twice—once in Fort Pierce in May 2023 and then in Miami in November 2023—after the first jury was unable to reach a verdict. The second trial resulted in a verdict for the Woods, followed by post-trial motions, entry of final judgment, and an appeal to the Eleventh Circuit. The billing records reflect substantial time devoted to trial preparation, among other litigation tasks. For example, Mr. Liggio's records contain 24 entries devoted to trial preparation, reflecting the significant preparation required for the two trials.

Considering the duration and complexity of the litigation, the extensive discovery and motion practice, the two jury trials, the post-trial proceedings, and the absence of any specific objection to the hours claimed, I find that the time expended was reasonably necessary to litigate this action. Overall, the billing journal reflects appropriate billing judgment and I therefore decline to recommend any reduction in the hours claimed.

*c. Lodestar Calculation*

Applying the reasonable hourly rates set forth above to the hours reasonably expended results in a lodestar of **$488,810.50**, calculated as follows:

| **Name/Position** | **Recommended Hourly Rate** | **Hours** | **Total Lodestar** |
|---|---|---|---|
| Jeffrey Liggio/Lead Trial Counsel | $700 | 277.05 | $193,935.00 |
| Jason Cornell/Trial Counsel | $500 | 485.63 | $242,815.00 |
| Jesse Isom/Trial Counsel | $300 | 109.67 | $32,901.00 |
| Kathy Harmon/Paralegal | $150 | 127.73 | $19,159.50 |
| | | 1,000.08 | **$488,810.50** |

*3. Contingency Risk Multiplier*

The Woods seek a 2.0 contingency risk multiplier to the lodestar, arguing that the case presented great risk at the outset and that they would have faced substantial difficulty obtaining qualified counsel in the relevant market without the possibility of a multiplier. DE 266 at 9-12, DE 278 at 5-14. Progressive opposes a multiplier, arguing that the Woods have not presented competent evidence establishing that a multiplier was necessary to obtain competent counsel, that counsel was unable to mitigate the risk of nonpayment, or that the remaining *Quanstrom* factors, discussed below, otherwise support an enhancement. DE 271 at 5-9.

Florida law allows a court to apply a contingency risk multiplier when warranted by the circumstances of the case. *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990); *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("Sometimes courts apply to the lodestar a multiplier, also known as an enhancement or an upward adjustment, to reward counsel on top of their hourly rates") (citation omitted). Unlike the federal approach, Florida law does not require a prevailing party seeking a contingency risk

multiplier to demonstrate "rare" or "exceptional" circumstances. *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1123, 1128–29 (Fla. 2017).

Under *Quanstrom*, Florida courts consider three factors: "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe*[3] are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." *Quanstrom*, 555 So. 2d at 834. Florida courts have ruled that the first factor is the most important. *Davis v. Nationwide Ins. Co. of Am.*, 2022 WL 2341238, at *5 (S.D. Fla. Jan. 28, 2022) (citing *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990). And this first factor is directed not merely at whether competent attorneys are available, but whether attorneys capable of handling the case would have taken it absent the availability of a multiplier. *Joyce*, 228 So. 3d at 1135. Before adjusting the lodestar for risk, there must be evidence that, without the enhancement, the plaintiff would have faced substantial difficulty obtaining counsel in the relevant market. *See Sun Bank*, 564 So. 2d at 1079 (Fla. 1990).

If a multiplier is appropriate, *Quanstrom* provides for a multiplier of 1.0 to 1.5 if success was more likely than not at the outset, 1.5 to 2.0 if the likelihood of success was approximately even at the outset, and 2.0 to 2.5 where success was unlikely at the outset. *Quanstrom*, 555 So. 2d at 834; *see also Collazo*, 2025 WL 2816883, at *9 (citation omitted).

---

[3] In *Rowe*, the Florida Supreme Court set forth the following factors to be used in determining reasonable attorneys' fees: (1) the time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the customary fee charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985)

Here, the Woods rely on their own affidavits, DE 266-6, DE 266-7, and the affidavits of attorneys Roger Messer and David Baron, DE 267-1, DE 277-2. The Woods' affidavits are essentially the same. They both state that the underlying excess judgment against them exceeded $180,000 and remained unsatisfied; that they could not afford to satisfy the judgment or retain competent bad-faith counsel at hourly rates; and that Mr. Liggio agreed to represent them on a contingency basis. DE 266-6 at ¶¶ 9, 11-12, 14; DE 266-7 ¶¶ 9, 11-12, 14. They further emphasize the substantial litigation that followed, including two jury trials, post-trial proceedings, and an appeal. DE 266-6 at ¶¶ 15-20; DE 266-7 ¶¶ 15-20. The Woods point to disputes concerning Progressive's handling of the underlying claim, privilege and work-product issues involving Progressive's in-house counsel, an unsuccessful mediation, and what they characterize as Progressive's aggressive litigation posture. Finally, the Woods rely on Mr. Messer's opinion that only two or three attorneys in Florida could properly handle the case, with Mr. Liggio at the top of that list, DE 267-1 ¶ 16, and Mr. Baron's opinion that a 2.0 multiplier is warranted because there was "no certainty of success at the outset" and the litigation was certain to be "time consuming and expensive." DE 277-2 ¶ 11(e).

Turning to the *Quanstrom* factors, the first one does not support an enhancement. For this factor, the critical inquiry is not simply whether the case was difficult or whether the Woods could afford hourly counsel. Rather, the Woods must establish that competent counsel in the relevant market would have been unavailable to them absent the possibility of a multiplier. *See Joyce*, 228 So. 3d at 1135. They have not made that showing.

Mr. Messer's affidavit comes closest to addressing the relevant-market inquiry, but it does not bridge the evidentiary gap. Mr. Messer, who represented the injured driver in the underlying action, states that he was familiar with Progressive's litigation practices and that

while "it might have been possible for the Woods to obtain alternate counsel from local attorneys here in the 19th Circuit[,]" he believed that only two or three attorneys in Florida could properly handle this particular bad faith action, with Mr. Liggio at the top of the list. DE 267-1 ¶¶ 16, 20. But Mr. Messer does not identify the other attorneys, explain whether they were available, state that he contacted them, or provide evidence these qualified attorneys would have declined the representation without the possibility of a multiplier. Nor does he offer market-based evidence establishing that a contingency multiplier was necessary to obtain competent counsel for this type of bad-faith action.

Mr. Baron's affidavit also does not cure the deficiency. Mr. Baron is qualified and personally familiar with the abilities of Mr. Liggio and Mr. Cornell, DE 277-2 ¶ 7, and his opinion is entitled to consideration. But his opinion regarding the multiplier rests principally on the uncertainty, anticipated duration, and expense of the litigation. DE 277-2 ¶ 11(e). His affidavit summarizes the law on the multiplier issue but then summarily asserts that a 2.0 multiplier "is warranted as there is no certainty of success at the outset, but a certainty that litigation would be time consuming and expensive, and the attorneys would be challenged throughout the litigation process and success was unknown." *Id.* Mr. Baron offers no evidence concerning the relevant legal market, nor does he offer proof that competent attorneys would have declined the representation absent a multiplier. His affidavit therefore supports the general proposition that this was a risky and demanding case, but not the distinct proposition required by the first *Quanstrom* factor; that is, whether attorneys capable of handling the case would have taken it absent the availability of a multiplier. *See Joyce*, 228 So. 3d at 1135; *see also Davis*, 2022 WL 2341238, at *6 (declining to award multiplier in bad faith insurance case based,

in part, on attorney fee expert's summary determination that multiplier was warranted without providing "any tangible evidence to support [his] broad and conclusory assertions").

That distinction is dispositive here. In *Joyce*, the Florida Supreme Court upheld a 2.0 multiplier because the record contained substantial competent substantial evidence concerning the relevant market, including testimony from the plaintiffs' attorney and a fee expert who had interviewed attorneys handling similar insurance claims and concluded that a multiplier was necessary to obtain competent counsel. *Joyce*, 228 So. 3d at 1124, 1134-35. *Joyce* rejected a categorical "rare and exceptional" requirement, but it reaffirmed that the *Quanstrom* factors must be supported by competent evidence. *Joyce*, 228 So. 3d at 1123, 1128-35. And, relevant here, the *Joyce* court explained that the first *Quanstrom* factor asks "not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively *and who would have taken the case absent the availability of a contingency fee multiplier.*" *Id.* at 1135 (emphasis added).

My decision in *Levesque v. Government Employees Insurance Co.* illustrates the type of evidence necessary to satisfy this threshold requirement. There, the plaintiffs did not rely merely on evidence that the case was complex, risky, or vigorously defended. Rather, their fee expert offered evidence directed specifically to the relevant legal market. Among other things, the expert polled other bad-faith attorneys—including plaintiffs' counsel—who stated that they would not have accepted a case like *Levesque* without the potential for a contingency fee multiplier. *Levesque v. Gov't Emps. Ins. Co.*, 2022 WL 1679132, at *10 (S.D. Fla. Mar. 11, 2022) (Maynard, J.). The expert also explained why the particular characteristics of the case—including its unusual procedural posture, the substantial unrecoverable costs associated with

litigating damages in federal court, the likelihood of trial, and the unlikelihood of settlement—made representation especially unattractive on a contingency basis. *Id.* at *10-12.

Thus, the multiplier in *Levesque* rested on competent evidence that attorneys in the relevant market with the skills necessary to handle the case would have been unwilling to undertake the representation without the possibility of a multiplier. Indeed, I expressly found, based on the expert testimony and the circumstances existing when counsel undertook the representation, that "the market required a contingency fee multiplier for competent counsel to take the risk of litigating Plaintiffs' bad faith case." *Id.* at *12. No comparable market evidence has been presented here. Evidence that this case was difficult, required skilled counsel, or carried a substantial risk of nonpayment does not, standing alone, establish the critical first factor: that the availability of a multiplier was necessary to obtain competent counsel in the relevant market.

Indeed, the showing in this case more closely resembles the circumstances addressed in *Collazo v. Progressive Select Insurance Co.*, where a court declined to award a multiplier because the plaintiff failed to present sufficient evidence that a multiplier was necessary to obtain competent counsel or that he would have had difficulty obtaining such counsel. *Collazo*, 2025 WL 2816883, at *10 (S.D. Fla. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2816881 (S.D. Fla. Aug. 26, 2025). There, as here, the plaintiff relied substantially on the risk and difficulty of the litigation and on privilege issues arising in insurance bad-faith litigation, but the court found that those circumstances did not establish the first *Quanstrom* factor. *Id.*; *see also Fla. Peninsula Insurance Co. v. Wagner*, 196 So. 3d 419, 422–23 (Fla. 2d DCA 2016) (reversing multiplier where the record did not establish that the relevant market could not provide competent counsel without an enhancement).

The second *Quanstrom* factor weighs in the Woods' favor. The controlling consideration in determining whether counsel could mitigate the risk of nonpayment is generally whether the client could afford a retainer or hourly fees. *Wesson v. Florida Peninsula Ins. Co.*, 296 So. 3d 572, 573–74 (Fla. 1DCA 2020). The Woods aver that they could not afford to pay counsel on an hourly basis, and Mr. Liggio therefore accepted the representation on a contingency basis. This evidence supports a finding that counsel had no meaningful means of mitigating the risk of nonpayment. *See Joyce*, 228 So. 3d at 1125; *Wesson*, 296 So. 3d at 573–74. Indeed, in *Levesque*, I found this factor satisfied where the plaintiffs' expert averred that the plaintiffs lacked the means to pay for legal services and had a pure contingency fee arrangement with counsel. *Levesque*, 2022 WL 1679132, at *12. Although the existence of a contingency agreement does not itself establish entitlement to a multiplier, the Woods have presented evidence addressing the relevant inquiry under the second *Quanstrom* factor—their inability to pay counsel on a noncontingent basis. This factor therefore favors an enhancement.

The third *Quanstrom* factor presents the closest question. There is no question that this was substantial and demanding litigation. The Woods obtained a favorable result after extensive discovery and motion practice, expert involvement, two jury trials in different cities after the first trial ended without a verdict, post-trial proceedings, and an appeal. The case also involved discovery and privilege disputes that required additional litigation. These circumstances demonstrate that counsel assumed a meaningful litigation risk and, together with the favorable result and contingent nature of the representation, weigh in the Woods' favor under the third *Quanstrom* factor.

In this respect, *Levesque* provides some support for the Woods' position, although the circumstances there reflected an even greater litigation risk. In *Levesque*, the record included

evidence that GEICO rarely settled bad-faith cases and had a reputation among bad-faith practitioners for aggressively litigating them; that GEICO had prevailed in the large majority of federal bad-faith cases identified by the plaintiffs' expert; and that courts had reprimanded GEICO or its counsel for litigation misconduct in other cases. *Levesque*, 2022 WL 1679132, at *10. That evidence, coupled with the unusual procedural posture of the case, the substantial potentially unrecoverable litigation expenses, and the extensive motion practice and nine-day trial, demonstrated the considerable risk counsel assumed in undertaking the representation. *Id.* at *10–12. Although the record here does not demonstrate the same degree of litigation risk, the course of this litigation nonetheless establishes that the Woods' counsel undertook a substantial and demanding representation. The third factor therefore favors an enhancement.

The fact that the second and third factors favor the Woods, however, does not overcome their failure of proof on the first and most important *Quanstrom* factor. The relevant question is not simply whether counsel undertook a difficult or risky case, but whether the relevant market required the availability of a multiplier for the Woods to obtain competent counsel. Unlike in *Levesque*, the Woods presented no competent market evidence establishing that attorneys with the skills necessary to handle this case would not have accepted the representation absent the possibility of a multiplier. Accordingly, notwithstanding the substantial nature of the litigation and the favorable result obtained, the Woods have not established that a contingency risk multiplier is warranted. I therefore decline to recommend application of a multiplier and find that the lodestar of **<u>$488,810.50</u>** constitutes a reasonable attorney's fee award.

***4. Request for Additional Costs***

The Woods seek to recover $35,585.29 in "court costs in addition to those taxable under 28 U.S.C. § 1920." DE 266 at 12. This amount sought consists of $33,747.50 in expert witness fees, $1,250 in mediation fees, $587.70 in hotel accommodations, and $1,704.84 in attorney transportation costs. *Id.* These itemized amounts as stated in the Motion, however, total $37,290.04, not the $35,585.29 requested. The Woods repeat the $35,585.29 figure in their reply without addressing or explaining the discrepancy. DE 278 at 14, 18. In any event, regardless of this discrepancy, the claimed costs are not recoverable for the reasons stated below.

Rule 54(d)(1) permits a prevailing party to recover costs authorized by § 1920, and the general rule is that costs are limited to those enumerated in § 1920. *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002); *see also Carrier v. Jest Operating, Inc.*, 2025 WL 553060, at *13 (M.D. Fla. Jan. 30, 2025), *report and recommendation adopted*, 2025 WL 549004 (M.D. Fla. Feb. 19, 2025).

The Woods rely on sections 57.041 and 624.155(4) of the Florida Statutes, as authority for awarding costs beyond those taxable under § 1920. But, in federal court, "the issue of costs is not determined by state law in a diversity case" with one exception where an "applicable state law expands the costs allowed under § 1920." *Jablonski v. St. Paul Fire & Marine Ins. Co.*, 2010 WL 1417063, at *10 (M.D. Fla. Apr. 7, 2010). But, in order for this sole exception to apply, the substantive law to be applied must "explicit[ly]" authorize the allowance of additional costs. *Id.* (citations omitted). In *Jablonski*, the court specifically considered Florida Statute § 624.155 and rejected the argument that this statute's reference to "court costs" authorized recovery of costs beyond those permitted by § 1920. Instead, the *Jablonski* court

held that the statute's "solitary reference to 'court costs'" did not expressly expand the costs otherwise allowable under § 1920. *Id.* at *11; *see also Hernandez v. Andujar*, 2024 WL 5284999, at *5 (M.D. Fla. Dec. 9, 2024), *report and recommendation adopted,* 2025 WL 35870 (M.D. Fla. Jan. 6, 2025) (declining to interpret a general statutory reference to "court costs" as expanding the categories of costs recoverable under § 1920). Similarly, Florida Statute § 57.041, which is Florida's general cost-shifting statute, does not provide an independent basis for awarding costs beyond those authorized by federal law in a diversity action. *See Collazo v. Progessive Select Ins. Co.*, No. 20-CV-25302, 2022 WL 18144067, at *5 (S.D. Fla. Dec. 19, 2022), *report and recommendation adopted*, 2023 WL 122614 (S.D. Fla. Jan. 6, 2023) (finding that application of Supreme Court precedent to this issue "results in only one conclusion: In diversity cases, Section 57.041, Florida Statutes does not permit a district court to award costs beyond those enumerated in 28 U.S.C. § 1920 (through Rule 54(d))").

Because neither statutory provision cited by the Woods—that is, Florida Statutes § 624.155(4) and § 57.041—expressly authorize the additional expenses sought, they are limited to the categories of costs recoverable under § 1920. The Woods are therefore not entitled to recover additional court costs for expert-witness fees, mediation fees, hotel expenses, and transportation fees.

## RECOMMENDATION

Based on the foregoing and my careful review of the Motion, the supporting materials, and the applicable law, I respectfully **RECOMMEND** that the Woods' Second Verified Renewed Motion for Attorney's Fees and Additional Costs, DE 266, be **GRANTED IN PART AND DENIED IN PART**. I recommend that the Woods be awarded **$488,810.50** in attorney's fees, representing a presumptively reasonable lodestar based on the applicable hourly rates and

compensable hours, with no contingency risk multiplier applied. I further recommend that the Woods request for additional costs be **DENIED**.

**NOTICE OF RIGHT TO OBJECT AND SHORTENED OBJECTIONS PERIOD**

Because this referred matter has been pending for an inordinate amount of time, and to promote judicial economy and finality to the parties, it requires prompt resolution. As such, I find it necessary and appropriate to shorten the time for any objections and response pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **SEVEN (7) DAYS** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Jose E. Martinez. See 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station* #4, 977 F.3d 1185, 1191–92 (11th Cir. 2020). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within FIVE (5) DAYS of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 27th day of August, 2026.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE